WESTERN PACIFIC RAILROAD CORP. ET AL. *v.*
WESTERN PACIFIC RAILROAD CO. ET AL.

NO. 150.

Argued December 15–16, 1952.—Decided April 6, 1953.

248

*Herman Phleger* argued the cause for petitioners in No. 150. With him on the brief were *Moses Lasky, Frank C. Nicodemus, Jr.* and *Norris Darrell.*

*Julius Levy* argued the cause for petitioners in No. 160. With him on the brief were *William E. Haudek* and *Webster V. Clark.*

*Allan P. Matthew* argued the cause for respondents. On the brief were *Mr. Matthew, James D. Adams, Robert L. Lipman, Burnham Enersen* and *Walker W. Lowry* for the Western Pacific Railroad Co. et al., and *Everett A. Mathews, A. Donald MacKinnon* and *Forbes D. Shaw* for the Western Realty Co., respondents.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The petitioners in these causes—a corporation and some of its stockholders—seek an accounting from respondents—certain other corporations which, prior to a reorganization in 1943, were subsidiaries of the petitioning corporation. It is petitioners' theory that respondents had unjustly enriched themselves by wrongfully appropriating a "tax loss" incurred by petitioner Western Pacific Railroad Corporation and applying it to the sole benefit of respondent Western Pacific Railroad Company.

The factual background upon which petitioners' complaint was founded is as complicated as it is unique. For present purposes, we may pass over it. Suffice it to say that the cause of action was founded on a theory of unjust enrichment; jurisdiction of the federal courts was invoked upon the grounds of the diverse citizenship of the parties.

The District Court denied relief, and the Court of Appeals affirmed by a two-to-one vote. Petitioners then applied for a rehearing before the Court of Appeals *en banc.* With one dissent, the rehearing was denied; the court in its order struck the request that the rehearing be *en banc.* Petitioners then filed a second application protesting that the action of the two judges, who struck out the request for a rehearing *en banc,* was error because such a request was authorized by statute and required the attention of the full court.

The Court of Appeals, *en banc,* declined to entertain this second application. Chief Judge Denman dissented. We granted certiorari; among other things, we deemed it important to resolve the *en banc* questions precipitated by this litigation. 344 U. S. 809.

The issues stem from 28 U. S. C. § 46 (c). It reads:

> "Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active circuit judges of the circuit."

It is petitioners' claim that the Code vests in a defeated party the right to ask for a rehearing *en banc;* the court as a whole must act upon such a petition; thus the Court of Appeals erred in refusing to entertain the application in this case.

Obviously, the claim calls for close analysis of § 46 (c). What particular right, if any, does it give to a litigant in a Court of Appeals? To what extent is he entitled to put the merits of his cause before each member of the court in pressing his demand for a hearing or a rehearing before the entire court?

In our view, § 46 (c) is not addressed to litigants. It is addressed to the Court of Appeals. It is a grant of power. It vests in the court the power to order hearings *en banc.* It goes no further. It neither forbids nor requires each active member of a Court of Appeals to entertain each petition for a hearing or rehearing *en banc.* The court is left free to devise its own administrative machinery to provide the means whereby a majority may order such a hearing.

The statute, enacted in 1948, is but a legislative ratification of *Textile Mills Securities Corp.* v. *Commissioner,*

314 U. S. 326 (1941)—a decision which went no further than to sustain the power of a Court of Appeals to order a hearing *en banc.* When the statute is cast in historical perspective, this becomes more readily apparent.

As early as 1938, the Judicial Conference of Senior Circuit Judges [1] recommended that the Judicial Code be amended to make it clear that "the majority of the circuit judges may be able to provide for a court of more than three judges when in their opinion unusual circumstances make such action advisable." [2]  The recommendation was renewed in 1939 and again in 1940. [3]  Thereafter, in 1941, when a conflict developed between circuits [4] as to the power to sit *en banc* under the old Judicial Code, identical bills were introduced in both the House (H. R. 3390) and the Senate (S. 1053) to amend the Code as recommended by the Judicial Conference. The proposed amendment took the form of a proviso to § 117:

> ". . . *Provided,* That, in a circuit where there are more than three circuit judges, the majority of the circuit judges may provide for a court of all the active and available circuit judges of the circuit to sit in banc for the hearing of particular cases, when in their opinion such action is advisable."  H. R. 3390, S. 1053, 77th Cong., 1st Sess.

---

[1] Now the Judicial Conference of the United States.

[2] Annual Report of the Attorney General (1938) p. 23.  For a full treatment of statutory difficulties which gave rise to some doubts as to the power to sit *en banc,* see *Textile Mills Securities Corp.* v. *Commissioner,* 314 U. S. 326, 328–330.

[3] Annual Report of the Attorney General (1939) pp. 15, 16.  Report of the Judicial Conference of Senior Circuit Judges (1940) p. 7.

[4] *Lang's Estate* v. *Commissioner,* 97 F. 2d 867 (C. A. 9th Cir. 1938); *Commissioner* v. *Textile Mills Securities Corp.,* 117 F. 2d 62 (C. A. 3d Cir. 1940), discussed in text *infra.*

252

When this legislation came up for a hearing before the Senate Judiciary Committee, Senator Danaher expressly raised the problem, "On whose motion would the court assemble en banc?" He was told that counsel might make a "suggestion," but that "the convening of the full court would be at the initiative of the court," and that it would not be desirable "to encourage the initiation of this suggestion by counsel." Senator McFarland said that from looking at the provision he got the impression that "they [the court] would be the ones to do the act-ing." Senator Kilgore agreed. Senator Danaher con-cluded that the amendment would be "impractical un-less we make it clear that . . . the judges themselves decide." [5]

This bit of legislative history is significant. Congress was attempting to frame legislation which would em-power a majority of circuit judges in any Court of Ap-peals to "provide" for hearings *en banc*. The problem was immediately raised: how would a court be convened *en banc*—would the legislation, as framed, give litigants the right to compel every judge to act on an application for a full court? The proponents of the legislation, and those who studied it, worked out this answer in their study of the problem: the determination of how the *en banc* power was to be exercised was to rest with the court itself—litigants should be free to suggest that a particu-lar case was appropriate for consideration by the full court, but they should be given no right to compel all circuit judges to take formal action on the suggestion.

Subsequent history of later proposals—drafted in sub-stantially similar language—discloses no change in pur-pose. The amendment to § 117 of the old Judicial Code

---

[5] The full text of this discussion is found in the Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 1053, 77th Cong., 1st Sess.

passed the House, but it was never acted upon by the Senate.[6] It may have died because this Court's decision in *Textile Mills* intervened.

The inter-circuit conflict which brought on the proposed amendment to § 117, and which was later resolved by the decision of this Court in *Textile Mills*, was purely a dispute over the *power* to sit *en banc;* it never reached the problem of how *en banc* proceedings were to be initiated. In *Lang's Estate* v. *Commissioner*, 97 F. 2d 867 (1938), the Ninth Circuit had held that under § 117 there was no way in which a circuit of more than three judges could provide the means to convene itself *en banc*. But the Third Circuit, in *Textile Mills*,[7] reached a contrary conclusion:

> ". . . we cannot agree with Judge Denman's contrary conclusion in Lang's Estate . . . . We conclude that *this court has power to provide,* as it has done by Rule 4 (1), for sessions of the court en banc, consisting of all the circuit judges of the circuit in active service." 117 F. 2d 62, 70–71. (Emphasis supplied.)

In affirming the Third Circuit, this Court did no more than sustain that court's exercise of the "power to provide . . . for sessions of the court en banc." There is nothing in that decision to indicate that we recognized any right in parties to have their cases passed upon by more than three circuit judges.

This was the state of the law in 1944, when the movement to revise the Judicial Code was in its early stages. At that time, Judge Maris, Chairman of the Judicial Conference Committee on the Revision of the Judicial

---

[6] 87 Cong. Rec. 8117. See H. R. Rep. No. 1246, 77th Cong., 1st Sess. Much of this legislative history is set out in footnote 14 of Mr. Justice Douglas' opinion for the Court in *Textile Mills*.

[7] *Supra,* note 4.

Code, submitted a memorandum to the House Committee on Revision of Laws. Pointing to this Court's decision in *Textile Mills,* he urged that the new Code should expressly provide "that except in cases and controversies . . . which *the court by rule or special order* directs to be heard by the full court, all cases and controversies brought before the court shall be heard by not more than three judges."[8] This proposal was the genesis of the present § 46 (c).[9] It was motivated by a dual purpose: to give express recognition to the doctrine of *Textile Mills,* while at the same time securing the tradition of three-judge courts against any further intrusion.

The first legislative draft of § 46 (c) did not differ in any material respect from its present form,[10] and the provision passed through the succeeding drafts and stages of legislative development without attracting any specific comment. But we are not left unassisted when we seek to divine the legislators' understanding of § 46 (c). We

---

[8] Memorandum of August 18, 1944, submitted to the Committee on Revision of Laws on August 21, 1944. (Emphasis supplied.) See note 9, *infra.*

[9] Revision of Federal Judicial Code, Preliminary Draft [of H. R. 3498, 79th Cong., 1st Sess.], Committee Print (1945), p. 11. The Reviser's Notes to § 46 (c) in this preliminary draft contained the following: "Such subsection (c) is based on recommendations of Circuit Judge Albert B. Maris of the third circuit in his memorandum dated August 18, 1944, and submitted to the Committee on Revision of the Laws on August 21, 1944."

[10] H. R. 3498, 79th Cong., 1st Sess. § 46 (c) read:

"(c) In each circuit cases shall be heard and determined by a court or division of not more than three judges unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active circuit judges present and available in the circuit."

The section came into its present form in the next draft, H. R. 7124, 79th Cong., 2d Sess. § 46 (c).

have the Reviser's Notes, which are entitled to great weight.[11] These comments were before Congress when it reviewed the proposed revision of the Code, and were relied upon to "explain . . . the source of the law and the changes made in the course of the codification and revision." [12]

The Reviser's Notes tell us that their purpose was two-fold: to "authorize the establishment of divisions of the court," and to "provide for the assignment of circuit judges for hearings" *en banc.*[13] Referring to the latter purpose, the Notes quote extensively from this Court's opinion in

[11] *Ex parte Collett,* 337 U. S. 55, 68–71 (1949).

[12] S. Rep. No. 1559, 80th Cong., 2d Sess., p. 2.

[13] The full text of the Reviser's Note (6 U. S. Cong. Serv. '48, pp. 1707–1708) reads:

"Based in part on title 28, U. S. C., 1940 ed., § 212 (Mar. 3, 1911, ch. 231, § 117, 36 Stat. 1131).

"Subsections (a)–(c) authorize the establishment of divisions of the court and provide for the assignment of circuit judges for hearings and rehearings in banc.

"The Supreme Court of the United States has ruled that, notwithstanding the three-judge provision of section 212 of title 28, U. S. C., 1940 ed., a court of appeals might lawfully consist of a greater number of judges, and that the five active circuit judges of the third circuit might sit in banc for the determination of an appeal. (See Textile Mills Securities Corporation v. Commissioner of Internal Revenue, 1941, 62 S. Ct. 272, 314 U. S. 326, 86 L. Ed. 249.)

"The Supreme Court in upholding the unanimous view of the five judges as to their right to sit in banc, notwithstanding the contrary opinion in Langs Estate v. Commissioner of Internal Revenue, 1938, 97 F. 2d 867, said in the Textile Mills case: 'There are numerous functions of the court, as a "court of record, with appellate jurisdiction", other than hearing and deciding appeals. Under the Judicial Code these embrace: prescribing the form of writs and other process and the form and style of its seal (28 U. S. C., § 219); the making of rules and regulations (28 U. S. C., § 219); the appointment of a clerk (28 U. S. C., § 221) and the approval of the appointment and removal of deputy clerks (28 U. S. C., § 222); and the fixing of the "times" when court shall be held (28 U. S. C., § 223). Furthermore,

256

*Textile Mills.*[14]   The language they quote is significant. It describes certain housekeeping functions of a Court of Appeals—functions which cannot be discharged by the court unless, on its own motion, it convenes itself as a body and acts as a body—such as rule making, appointing clerks and fixing the times when court shall be held.   Clearly the Reviser's Notes assimilated the power to sit *en banc* to the power to discharge these housekeeping functions, and it was precisely that description of the power which the revisers saw fit to use in describing to Congress what they deemed to be the nature of the power conferred by § 46 (c).

Furthermore, the Notes make it apparent that if the revisers intended to do anything more than codify *Textile Mills,* their concern was with preserving the "tradition" of three-judge courts against any further inroads.[15]   An interpretation of § 46 (c), which authorizes litigants, of right, to compel nonsitting judges to act in every case, is certainly a departure from the tradition of three-judge courts—a most controversial change which was plainly not anticipated by *Textile Mills.*   Yet Congress' purpose was codification, not alteration, of the

those various sections of the Judicial Code provide that each of these functions shall be performed by the court.'

"This section preserves the interpretation established by the Textile Mills case but provides in subsection (c) that cases shall be heard by a court of not more than three judges unless the court has provided for hearing in banc.   This provision continues the tradition of a three-judge appellate court and makes the decision of a division, the decision of the court, unless rehearing in banc is ordered.   It makes judges available for other assignments, and permits a rotation of judges in such manner as to give to each a maximum of time for the preparation of opinions.

"Whether divisions should sit simultaneously at the same or different places in the circuit is a matter for each court to determine."

[14] 314 U. S., at 332.

[15] See the next to final paragraph quoted in note 13, *supra.*

rules pertaining to the administration of the courts. The Senate was told by its Judiciary Committee that "great care has been exercised to make no changes in the existing law which would not meet with *substantially unanimous approval.*" [16] Similarly, Judge Maris told the House Committee on the Judiciary that the new Code "embodies a number of practical improvements in the judicial machinery *of a wholly noncontroversial nature* which have resulted from suggestions originating with the judges whose day to day administration of the various provisions of the Judicial Code gives them a special knowledge of these matters." [17]

A first reading of § 46 (c) may well leave one with doubts. It reposes power in "a majority of active circuit judges," and says no more. Perhaps, without further study, one might be inclined to fall back upon the general experience of our jurisprudence, and determine that the litigant is, by implication, given the right to compel the full court to determine whether it will exercise its power in a given case. But a study of the legislative background of § 46 (c) dispels such an idea and makes it quite clear that the draftsmen intended to grant the *en banc* power and no more; the court itself was to establish the procedure for exercise of the power.

This interpretation makes for an harmonious reading of the whole of § 46.[18] In this Section, Congress speaks

---

[16] S. Rep. No. 1559, 80th Cong., 2d Sess., p. 2. (Emphasis supplied.)

[17] Hearings before Subcommittee No. 1 of the Committee on the Judiciary of the House of Representatives on H. R. 1600 and H. R. 2055, 80th Cong., 1st Sess. 19. (Emphasis supplied.)

[18] The full text of 28 U. S. C. § 46 reads:

"Assignment of judges; divisions; hearings; quorum.

"(a) Circuit judges shall sit on the court and its divisions in such order and at such times as the court directs.

"(b) In each circuit the court may authorize the hearing and determination of cases and controversies by separate divisions, each

to the Courts of Appeals: the court, itself, as a body, is authorized to arrange its calendar and distribute its work among its membership; the court, itself, as a body, may designate the places where it will sit. Ordinarily, added Congress, cases are to be heard by divisions of three. But Congress went further; it left no doubt that the court, by a majority vote, could convene itself *en banc* to hear or rehear particular cases.

The juxtaposition of this last enactment with the others negates petitioners' interpretation of the Act. Litigants are certainly given no special standing to partake, as of right, in the court's decisions pertaining to arrangement of its calendar and the assignment of its cases to divisions. Just as the statute makes no provision binding the court to entertain every request that a particular case be assigned to a particular division, so it should not be construed to compel the court to entertain, *en banc,* motions for a hearing or rehearing *en banc.*

A contrary reading—one which would sustain petitioners—would obviously require a practice which might thrust unwarranted extra burdens on the court. It is difficult to believe that Congress intended to give an automatic, second appeal to each litigant in a Court of Appeals composed of more than three judges. Yet petitioners would have us hold that such a "horizontal" appeal is implicit in § 46. And, if petitioners are correct as to

consisting of three judges. Such divisions shall sit at the times and places and hear the cases and controversies assigned as the court directs.

"(c) Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active circuit judges of the circuit.

"(d) A majority of the number of judges authorized to constitute a court or division thereof, as provided in paragraph (c), shall constitute a quorum."

their claim that petitions for rehearing *en banc* must, as a matter of law, be passed upon by the full bench, the argument should apply equally to petitions requesting that the initial hearing of the case be *en banc,* because § 46 (c) treats "hearings" and "rehearings" with equality. But, again, there is nothing to suggest that every party in every case in every Court of Appeals may submit, as of right, a petition to every judge—a petition in the nature of a preliminary appeal—asking that the full bench examine his cause and formally rule on the question of whether it shall be heard *en banc.*

Accordingly, we hold that § 46 (c) does not require a Court of Appeals to do what petitioners claim should have been done in this case. The statute deals, not with rights, but with power. The manner in which that power is to be administered is left to the court itself. A majority may choose to abide by the decision of the division by entrusting the initiation of a hearing or rehearing *en banc* to the three judges who are selected to hear the case. On the other hand, there is nothing in § 46 (c) which *requires* the full bench to adhere to a rule which delegates that responsibility to the division. Because § 46 (c) is a grant of power, and nothing more, each Court of Appeals is vested with a wide latitude of discretion to decide for itself just how that power shall be exercised.[19]

But even if the statute grants only power plus the discretion for its exercise, that does not mark the end

---

[19] Having wide discretion the court may provide that the power may be called into play by any procedure convenient to the court. The statute simply provides that "a majority of the circuit judges of the circuit who are in active service" may order the hearing or rehearing *en banc.* This should not compel the full court to assemble, formally, *en banc,* to issue an order convening the full court. A more informal procedure may be used; such an order may be issued by the Chief Judge through the individual action of the necessary circuit judges without the necessity of convening the full court.

of our review of the *en banc* phase of this case. The *en banc* power, confirmed by § 46 (c), is, as we emphasized in the *Textile Mills* case, a necessary and useful power—indeed too useful that we should ever permit a court to ignore the possibilities of its use in cases where its use might be appropriate.[20]   If § 46 (c) is to achieve its fundamental purpose, certain fundamental requirements should be observed by the Courts of Appeals.   In the exercise of our "general power to supervise the administration of justice in the federal courts," [21] the responsibility lies with this Court to define these requirements and insure their observance.

It is essential, of course, that a circuit court, and the litigants who appear before it, understand the practice—

---

[20] See 314 U. S., at 334–336.   For further discussion on the utility and importance of permitting courts of appeals to sit *en banc,* reflecting the purpose behind § 46 (c), see H. R. Rep. No. 1246, 77th Cong., 1st Sess.; Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 1053, 77th Cong., 1st Sess., pp. 39–40.   See also Annual Report of the Attorney General (1939) pp. 15, 16; Report of the Judicial Conference of Senior Circuit Judges (1940) p. 7.   That this Court has deemed the *en banc* power to be an important and useful device in the administration of justice in the courts of appeals is apparent from our action in *United States ex rel. Robinson* v. *Johnston,* 316 U. S. 649 (1942), and *Civil Aeronautics Board* v. *American Air Transport, Inc.,* 344 U. S. 4 (1952).   In the *Robinson* case, *supra,* where it appeared that a "conflict of views" had arisen "among the judges of the Ninth Circuit," we remanded the case "for further proceedings, including leave to petitioner to apply for a hearing before the court *en banc.*"   316 U. S. 649, 650.   In the *American Air Transport* case, *supra,* where the division of the Court of Appeals "were unable to agree on a disposition of the case," we said, after dismissing the certificate: "Perhaps the Court of Appeals may now wish to hear this case *en banc* to resolve the deadlock indicated in the certificate and give full review to the entire case."   344 U. S., at 5.

[21] See *United States* v. *National City Lines,* 334 U. S. 573, 589 (1948).

whatever it may be—whereby the court convenes itself *en banc*. In promulgating the rules governing that procedure the court should recognize the full scope of its powers under § 46 (c). Consistent with the statute, the court may, as has been shown, adopt a practice whereby the majority of the full bench may determine whether there will be hearings or rehearings *en banc,* or they may delegate the responsibility for the initiation of the *en banc* power to the divisions of the court. But in recognizing the full scope of § 46 (c), the full membership of the court will be mindful, of course, that the statute commits the *en banc* power to the majority of active circuit judges so that a majority always retains the power to revise the procedure and withdraw whatever responsibility may have been delegated to the division. And, recognizing the value of an efficient use of the *en banc* power, the court should adopt such means as will enable its full membership to determine whether the court's administration of the power is achieving the full purpose of the statute so that the court will better be able to change its *en banc* procedure, should it deem change advisable.

It is also essential that litigants be left free to suggest to the court, or to the division—depending upon where power of initiation resides, as determined by the active circuit judges of the court—that a particular case is appropriate for consideration by all the judges. A court may take steps to use the *en banc* power sparingly, but it may not take steps to curtail its use indiscriminately. Counsel are often well equipped to point up special circumstances and important implications calling for *en banc* consideration of the cases which they ask the court to decide.[22] If, in the exercise of its discretion under

---

[22] Cf. *United States ex rel. Robinson* v. *Johnston,* 316 U. S. 649 (1942); *Civil Aeronautics Board* v. *American Air Transport, Inc.,* 344 U. S. 4 (1952).

§ 46 (c), a court denies litigants the privilege of reaching the ear of every circuit judge on the *en banc* question, there is still no reason to deny them access to the few circuit judges who must act initially, and perhaps decisively, on the matter for the others. Counsel's suggestion need not require any formal action by the court; it need not be treated as a motion; it is enough if the court simply gives each litigant an opportunity to call attention to circumstances in a particular case which might warrant a rehearing *en banc*.[23] And of course to hold that counsel are entitled to speak to the *en banc* question, is not to hold that the court itself is in any way deprived of the power to initiate *en banc* hearings *sua sponte*. The statute commits the power of initiation to the court; the litigants' function must therefore be limited; but, certainly, if the *en banc* power is to be wisely utilized, there is no reason to deny the litigants any chance to aid the court in its effective implementation of the statute.

Finally, it is essential to recognize that the question of whether a cause should be heard *en banc* is an issue which should be considered separate and apart from the question of whether there should be a rehearing by the division. The three judges who decide an appeal may be satisfied as to the correctness of their decision. Yet, upon reflection, after fully hearing an appeal, they may come to believe that the case is of such significance to

---

[23] Similarly, to hold that counsel can "suggest" that the court exercise its *en banc* power is not to hold that counsel are entitled, as of right, to petition the full court to order that the initial hearing of a case be *en banc*. Suggestions filed with the court prior to the assignment of a case to a division or prior to the hearing before a division should not necessarily require special advance consideration by the court. They may be considered whenever the court or division deems it appropriate to consider them, and no formal action need be taken upon the suggestion.

the full court that it deserves the attention of the full court.

The foregoing should make it clear that rejection of petitioners' interpretation of § 46 (c) does not compel affirmance of all that was done below in disposing of the applications for a rehearing *en banc*. It should also be decided whether the *en banc* issue has been adequately treated by the Court of Appeals. A review of the proceedings below convinces us that further consideration by that court is appropriate.

After the division which heard the appeal had announced its decision, petitioners asked for a rehearing *en banc*. A per curiam issued from the division:

> "The petitions of the appellants and intervenors for a rehearing are denied. Insofar as the petitions seek a rehearing en banc, they are stricken as being without authority in law or in the rules or practice of the court. See Kronberg v. Hale, 9 Cir., 181 F. 2d 767." 197 F. 2d, at 1012.

The striking of petitioners' motion is certainly ambiguous. If we accord full legal significance to this order, we must conclude that the division ruled that counsel were not free to suggest, even to the division, that the case was appropriate for a rehearing *en banc*. Enough has already been said to show that this was error.

Indeed, if the three judges who decided the merits of this cause were of the opinion that counsel's request was "without authority in law," it may well be that they simply considered themselves powerless to act in any way on the *en banc* question. Two judges on the panel were district judges.[24] One district judge dissented from the

[24] That a Court of Appeals may be so constituted is, of course, clear. See 28 U. S. C. § 292 (a). And we do not mean to imply that the division which heard the merits of the appeal was any less a division of the Court of Appeals than would have been a division of three circuit judges.

denial of a rehearing, and his understanding of the procedure which the Court of Appeals utilized to convene its full bench seems to differ from what was subsequently announced by six members of the court.[25]  Indeed, at that time, it was by no means clear just what procedure the court followed to convene itself *en banc*.[26]

Following the second decision of the division, petitioners renewed their demand for a rehearing *en banc* by asking the court to reinstate their petition.  Chief Judge Denman convened the active circuit judges so that the court might determine its authority in the matter, set forth its interpretation of § 46 (c) and fully advise the bar of its determination.  Accordingly the court, *en banc,* declined to entertain petitioners' application and proceeded to explain why.  Construing § 46 (c) the court said, 197 F. 2d, at 1015:

> "The statute, it will be recalled, commits to a 'court or division of not more than three judges' the power to *hear* and *determine* the cases and controversies assigned to it.  Obviously its determination of any such case or controversy is a decision of the Court of Appeals, and as such is a final decision, subject to review only as prescribed by 28 U. S. C. A. § 1254.  Circuit judges other than those designated

[25] The dissenting judge wrote, 197 F. 2d, at 1013:
"I therefore suggest to the Court of Appeals a rehearing en banc of all the Circuit Judges.  For this there is precedent in this Circuit.  The practice, as I understand it, substantially accords with that of the Third Circuit, which is admirable.  Inasmuch as this might be the court of last resort in this case, it seems fairer to have the issues disposed of by Circuit Judges."

[26] Compare *Crutchfield* v. *United States,* 142 F. 2d 170, 178, note 3, (1943); *Independence Lead Mines Co.* v. *Kingsbury,* 175 F. 2d 983, 992 (1949); and *Kronberg* v. *Hale,* 181 F. 2d 767 (1950).  See 63 Harv. L. Rev. 1449 (1950).

to sit on such court or division are not members of it, and officially they play, and are entitled to play, no part in its deliberations at any stage. That this is so is made clear by subdivision (a) of § 46 . . . providing that 'Circuit judges shall sit on the court and its divisions in such order and at such times as the court directs.' If regard be had for this mandate circuit judges may not intrude themselves, or be compelled on petition of a losing party to intrude, upon a court or division on which they have not by order of the court been directed to sit.

"A petition for rehearing in any such case, whatever its form or wording, must necessarily be treated as addressed to and is solely for disposition by the court or division to which the case was assigned for determination. . . . From this time forward petitions, if any, for rehearing in banc in cases determined by divisions of three judges will be considered and disposed of by the latter as ordinary petitions for rehearing."

This language suggests that the full bench has refused completely to consider the merits of the *en banc* request. Instead, the court ruled that, "from this time forward," the division, alone, is entrusted with that responsibility. Yet there is nothing to show that this procedure, which the full bench said was to govern henceforth, had been followed by the division in this case. On the contrary, as has been shown, the division in this case apparently acted on the theory that it was "without authority in law" to consider the *en banc* request.

This language also suggests that the court thought that it had no discretion in administering the *en banc* power, that § 46 (c) "necessarily" limited consideration of the question of whether there should be a hearing *en banc* to the division. Perhaps other language in the

opinion [27] negates the inference that the full court ruled as it did because it believed the statute required that result and permitted no alternative practice. But, at the very least, we are left in doubt. Certainly Chief Judge Denman, who dissented vigorously, thought that the court's ruling came as a matter of statutory compulsion. And of course if it did, it rests on an erroneous interpretation of § 46 (c).

We have, then, a record which seems to tell us that the division of the Court of Appeals, which decided the merits of this difficult and complicated litigation, turned a deaf ear to counsel's request for a full bench—quite

[27] Thus the Court wrote:

"On these considerations and in harmony with its understanding of the statutory scheme, the court has consistently retained to itself as a matter of administrative and intramural concern only the problem whether or not any given case should be heard or reheard in banc. Accordingly, in the exercise of its uncontrolled discretion the court has declined altogether to entertain petitions of litigants for such hearings. The position it takes is that, apart from the possible disqualification of a judge, the composition of the court to which a case may be assigned for determination is a matter wholly outside the province of the parties." 197 F. 2d, at 1016.

In *Bradley Mining Co.* v. *Boice,* 198 F. 2d 790 (C. A. 9th Cir. 1952), Judge Pope dissenting from the denial of a petition for a rehearing *en banc* wrote:

". . . I do not think the statute intended that I, not a member of the division which heard the Western Pacific case, should have to read all the record in that case, as I might well find necessary in order to vote intelligently upon the petition.

"There is language in subdivision (c) of § 46 of Title 28 which would seem to grant to a majority of the circuit judges of the circuit the right to order a hearing or rehearing in bank in any case, a procedure which I am of course not proposing here. That is a question which was not determined by the majority opinion in the Western Pacific case, although Judge Denman seems to think that it was. Upon that question I reserve judgment until such time as determination becomes necessary." 198 F. 2d, at 792, note 2.

conceivably on the theory that the division lacked the power to act. Likewise the full bench refused to countenance the request, saying that the initial responsibility "necessarily" lay with the division alone—although the division may have been unaware of that responsibility. Possibly acting under a misconception of the breadth of its powers, the full bench has promulgated rules for the hearing of cases *en banc,* and if the court has misconceived its powers perhaps it may now wish to adopt some other practice to administer § 46 (c).

The statute which we have construed is not without ambiguity; perhaps that difficulty is now resolved. The action of the court below is also not without ambiguity, for the court announced a practice which, "from this time forward," was to govern the ordering of rehearings *en banc,* but that practice was not followed in this case; neither the full bench nor the division—whose decision was to govern henceforth—gave any independent consideration to the merits of the *en banc* issue in this case.

Accordingly, we vacate the order of the division denying petitioners a rehearing and vacate the order of the full court denying petitioners leave to file a motion to reinstate their petition for rehearing *en banc;* we remand the case to the Court of Appeals for further proceedings. We hold that the statute is simply a grant of power to order hearings and rehearings *en banc* and to establish the procedure governing the exercise of that power. We hold that litigants are given no *statutory* right to compel each member of the court to give formal consideration to an application for a rehearing *en banc.* We hold that the statute does not compel the court to adopt any particular procedure governing the exercise of the power; but whatever the procedure which is adopted, it should be clearly explained, so that the members of the court and litigants in the court may become thoroughly familiar with it; and fur-

ther, whatever the procedure which is adopted, it should not prevent a litigant from suggesting to those judges who, under the procedure established by the court, have the responsibility of initiating a rehearing *en banc,* that his case is an appropriate one for the exercise of the power. On remand, and in light of our interpretation of the statute and the basic requirements necessary for its efficient administration, the court should determine and clearly set forth the particular procedure it will follow, henceforth, in exercising its *en banc* power. If the court chooses to abide by a procedure which entrusts the initiation of rehearings *en banc* to the division, then the court should give an opportunity to the division for appropriate consideration of that question in this case.

MR. JUSTICE FRANKFURTER.

We held in *Textile Mills Securities Corp.* v. *Commissioner,* 314 U. S. 326, construing an ambiguous statute, that courts of appeals consisting of more than three active circuit judges had inherent power to sit *en banc.* Thereafter Congress placed this power on a statutory basis. 28 U. S. C. § 46 (c). Petitioners in this case claim that, in exercising the authority to sit *en banc* for the rehearing of a cause adjudicated by a three-judge panel, all the active judges of a court of appeals must formally consider the merits of the defeated party's formal motion for such a rehearing. I agree with the Court in its rejection of this claim. I equally agree that, as an abstract proposition, *en banc* sitting expresses the court's power and not the litigant's right. I agree, finally, that courts of appeals may have general rules, whether formally promulgated or traditionally recognized, concerning the exercise of this discretionary power, and that it is for them and not for us to establish such rules.

No one can feel more strongly than I do that the function of the courts of appeals in the federal judicial system

requires that their independence, within the area of their authority, be safeguarded. "Certainly this Court should in every possible way attribute to [them] a prestige which invites reliance for the burdens of appellate review except in those cases, relatively few, in which this Court is called upon to adjudicate constitutional issues or other questions of national importance." *Ex parte Peru,* 318 U. S. 578, 590, 602 (dissenting opinion). And so what follows is not to be read as suggesting subordination of the discretionary powers of the courts of appeals to our direction.

The language of 28 U. S. C. § 46 (c) and its history do not, I believe, indicate either that Congress expected courts of appeals to sit *en banc* for the disposition of motions praying that they hear or rehear causes *en banc,* or that Congress expected they would not do so. The hearings on S. 1053—the predecessor proposal of § 46 (c), which failed of passage—are equivocal on this point. Remarks, such as Senator McFarland's, that the courts "would be the ones to do the acting" graze the problem. It was not urged that counsel should do the "acting" in the sense that it would be mandatory to grant a motion for rehearing *en banc* whenever one was made. There was on the other hand the testimony of Chief Justice Groner of the Court of Appeals of the District, who indicated quite clearly that counsel would be expected to move the courts to sit *en banc.* Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 1050, S. 1051, S. 1052, S. 1053, S. 1054 and H. R. 138, 77th Cong., 1st Sess., at pp. 17, 40. The view of so experienced and wise a judge carries great weight. In any event, this is the legislative history of a bill which never became law. No legislative light was shed on § 46 (c).

It is right to conclude that Congress left it to the courts of appeals to decide how they would exercise their discretionary power to sit *en banc.* But it is no less rea-

sonable to conclude that the courts of appeals are to exercise their discretion so as to effectuate the purposes of the legislation. Before I proceed with consideration of the modes by which the power to sit *en banc* may be brought into play, in light of the ends to be achieved by it, a word about rehearings in general becomes relevant.

Rehearings are not a healthy step in the judicial process; surely they ought not to be deemed a normal procedure. Yet one who has paged the Federal Reporter for nearly fifty years is struck with what appears to be a growth in the tendency to file petitions for rehearing in the courts of appeals. I have not made a quantitative study of the facts, but one gains the impression that in some circuits these petitions are filed almost as a matter of course. This is an abuse of judicial energy. It results in needless delay. It arouses false hopes in defeated litigants and wastes their money. If petitions for rehearing were justified, except in rare instances, it would bespeak serious defects in the work of the courts of appeals, an assumption which must be rejected. It is important to bear this in mind in approaching 28 U. S. C. § 46 (c). That section is directed at those relatively few instances which call for rehearings, though again rarely, in the nine courts of appeals that sit in panels.

Rehearings *en banc* by these courts, which sit in panels, are to some extent necessary in order to resolve conflicts between panels. This is the dominant concern. Moreover, the most constructive way of resolving conflicts is to avoid them. Hence, insofar as possible, determinations *en banc* are indicated whenever it seems likely that a majority of all the active judges would reach a different result than the panel assigned to hear a case or which has heard it. Hearings *en banc* may be a resort also in cases extraordinary in scale—either because the amount in-

volved is stupendous or because the issues are intricate enough to invoke the pooled wisdom of the circuit. Any procedure devised by a court of appeals which is sensibly calculated to achieve these dominant ends of avoiding or resolving intra-circuit conflicts may be adopted agreeably with § 46 (c). A rule providing that petitions for rehearing *en banc* may be made to, and will be considered by, the court *en banc* would, of course, be so calculated. And, to repeat, that being so, it is not for us to pass on the advantages or disadvantages of such a rule, though one may think, as I do, that it is likely to impose an undue burden by unwittingly encouraging the lax inclination of counsel to file *pro forma* petitions automatically in every case.

The ends of § 46 (c) may be served in other ways than by permitting petitions for rehearing *en banc*. A court may decide that it will act under § 46 (c) only *sua sponte* and will do so whenever the need is made evident, not by wasteful use of judicial resources through excessive preliminary consideration *en banc* to determine whether or not the need exists, but by the process of having each panel circulate its opinions, before they are emitted, to all the active members of the court. This, it appears, was the practice of the Court of Appeals of the District under Chief Justice Groner. See Hearings before a Subcommittee of the Senate Committee on the Judiciary, *supra,* at p. 39. It accomplishes what is essential to the achievement of the purposes for which the power to sit *en banc* exists, since it acquaints all active judges on the court "with the proposed opinion that is coming down, so if they do have an opportunity to point out any conflict, or something of the kind, it may be done . . . ." *Ibid.* (testimony of Groner, C. J.). To be sure, the non-sitting judges have not heard the argument nor read the

briefs, and have no vote as far as the opinion of the panel is concerned. Presumably, however, an opinion states the issues and gives the grounds for its conclusion and thereby sufficiently alerts the minds of experienced judges to what is at stake. It taps their knowledge of legal considerations that may lead, on the initiative of a non-sitting or of a sitting judge, to a determination by the entire court of whether or not a rehearing *en banc* is called for.

There may be—there doubtless are—other ways in which a court of appeals, acting *sua sponte,* may accomplish all that needs to be accomplished in the exercise of the discretionary power to sit *en banc.* But I do not see how any procedure can do so whose effect is not to apprise all active judges either of all decisions of panels of the court, or of those decisions which counsel bring to the court's attention, by motion or suggestion—the nomenclature is immaterial—as raising the problems at which the grant of power in § 46 (c) is directed. For this reason I do not believe that a delegation of authority to the panel which heard the case to dispose finally, in behalf of the entire court, of petitions for rehearing *en banc*—if there are to be such petitions and if through them alone § 46 (c) is to be implemented—would constitute adoption of a permissible procedure for the exercise of the power conferred by § 46 (c). It may be proper to require petitions for rehearing *en banc* to be made to the panel in the first instance, but to allow the discretionary function under § 46 (c) to be discharged definitively by the panel whose judgment may call for *en banc* action is to treat the statute as an empty, purposeless form of words.

Since it does not appear in this case that the Court of Appeals, as a whole, at any time exercised its discretion under 28 U. S. C. § 46 (c) by considering the petition for a rehearing *en banc* on its merits, and since it does not appear that that court has established, and followed in this case, any other procedure for the exercise of its statu-

tory power in a manner consistent with the reasons for its grant, I concur in the judgment of the Court vacating the order below and remanding the cause.

Mr. Justice Jackson, dissenting.

I would not prolong this already aged litigation by remanding it for the Court of Appeals to reconsider whether it will hold a rehearing *en banc*. The decision that an individual litigant has a right to have his petition for rehearing *en banc* considered by at least three judges of the Court of Appeals stems not from statute, but from this Court's exercise of its vague supervisory powers over federal courts.

If I felt it incumbent upon me to help settle for Courts of Appeals whether they will sanction a practice of petitioning by litigants for *en banc* rehearings, I would decide in the negative. In cases of intracircuit conflict or other exceptional situations which actually demand the attention of the full court, the judges of a court should be trusted to convene on their own initiative.[1] A successful party has good cause for complaint if he is put through the added expenditure of this dilatory step except where public interest in the administration of justice requires it. Rehearings *en banc* are not appropriate where the effect is simply to interpose another review by an enlarged Court of Appeals between decision by a conventional three-judge court and petition to this Court. Delay, cost, and uncertainty, which take their toll of both the successful and the unsuccessful, the just and the unjust litigant, are each increased by an additional appeal to a hybrid intermediate court. Moreover, the fact that the

---

[1] The Ninth Circuit has followed this procedure on several occasions. *Southern Pacific Co.* v. *Guthrie,* 186 F. 2d 926; *Hopper* v. *United States,* 142 F. 2d 181; *Pacific Gas & Electric Co.* v. *Securities and Exchange Commission,* 139 F. 2d 298; *Evaporated Milk Association* v. *Roche,* 130 F. 2d 843.

court leaves the precise nature of the right which it confers on the losing litigant so unsettled and equivocal would lead me to conclude that the *en banc* question is one which the litigant should not be given standing to raise.

If I were to predict, I would guess that today's decision will either be ignored or it will be regretted. Perhaps its requirements may be met if the panel which heard the case will append to its denial of rehearing the further statement "and rehearing *en banc* denied." This would be its most innocuous possible effect. Unfortunately, however, more significant results may follow. It is likely to open new complexities in federal practice and generate a new body of procedural law to vex courts and impoverish litigants. The litigant's petition for rehearing *en banc* is not a motion; it is a "suggestion." He is urged to point out to the judges the "circumstances in a particular case which might warrant a rehearing *en banc*." There may yet be chapters in future manuals of federal practice exploring the differences between a motion and a "suggestion," and cases in the courts deciding just what more the suggesting litigant is entitled to than the right to have the words "petition denied" instead of "petition stricken." This increase in the ponderousness of the federal court system may be a minor rather than a major evil, but it is counterbalanced, at most, only by a negligible good.

But just as surely as I am persuaded that *en banc* hearings should be discouraged in most cases and left to be initiated by the judges *sua sponte,* I am convinced that the whole practice on the subject is best left to each Court of Appeals. A diversity of practices has grown up in the various courts,[2] presumably in response to their different

---

[2] 5 Stan. L. Rev. 332, 337, notes the practices of some of the Courts of Appeals as follows, based on information received from the clerks of the respective courts: The Court of Appeals for the District of Columbia Circuit considers all motions for rehearing *en banc;* the Sixth Circuit and the Tenth Circuit sit only on the motion of one of the judges; the Second Circuit simply does not sit *en banc.*

conditions or prevailing desires. If Congress had required that litigants' petitions for rehearing *en banc* receive the consideration of the Courts of Appeals, the policy would be ours to enforce without questioning its desirability. But it is conceded that Congress has not done this. It is we ourselves who are making the policy, and so it is especially desirable to vindicate our new rule with reasons and bounds. Yet, all that we are vouchsafed in the Court's opinion is that the power to sit *en banc* is a "necessary and useful power," with a citation to our holding that a Court of Appeals has power to sit *en banc*. *Textile Mills Securities Corp.* v. *Commissioner,* 314 U. S. 326. When it is remembered that the question to be answered here is not whether Courts of Appeals have power to sit *en banc,* about which there is no dispute, but rather whether a litigant may compel the judges to hear and decide his petition for rehearing *en banc,* the feebleness of this reed is clear. I think both wisdom and humility would be well served by leaving this problem to the solutions from time to time suggested to each circuit by its own experience.

The case before us presents interesting questions on which there appears no conflict between panels; in fact, it is so unique that it is without precedent and is likely to be without progeny. A rehearing before the entire circuit *en banc* would simply be an appeal from the three-judge court to a swollen circuit court. Since I would not reverse on the procedural point, I reach the merits of the controversy.

The complaint alleges diversity of citizenship, presence of the requisite amount in controversy, and states that "this is a civil action in equity between citizens of different states." Because federal jurisdiction was grounded in diversity of citizenship, California law is the law of the forum and may govern the case. However, foreign corporations, acts committed in other states, federal bank-

ruptcy proceedings and federal tax rulings are scrambled in the legal situation and law of other states may be involved. California certainly recognizes a cause of action based on unjust enrichment, whether it be treated as a common count, *Minor* v. *Baldridge,* 123 Cal. 187, 190, 55 P. 783, 784–785, or as a waiver of a tort and suit in assumpsit, *Bank of America National Trust & Savings Assn.* v. *Hill,* 9 Cal. 2d 495, 71 P. 2d 258. Whether we resort to California law, other state law or federal law, none rejects the general doctrine of unjust enrichment and fiduciary duty of corporate managements, although it would be surprising if there were an exact precedent anywhere for this unique situation. Thus, the courts below would have to analyze the facts in the light of general principles of unjust enrichment, with such aid as they may obtain on the specific issues from analogy.

We have two affiliated corporations subject to considerable, if not complete, common control, but with different minority interests. One has realized a huge loss; the other has enjoyed large net income. If these two can be brought together, a tax saving amounting in this case to some seventeen million dollars can be made for the profitable company. Congress has authorized, but has not required, that these two be merged by means of a consolidated tax return. Each has the right, but no legal duty, under federal law to join in consolidated returns.

It may seem anomalous at first glance that a sustained loss can be realized upon as an asset. But it is not the loss; it is the right to use the loss as an offset that is valuable. The market for it is restricted, of course, but this detracts nothing from its value to one in a position to utilize it.

Each of these corporations had something to contribute to a tax-saving plan. Either one alone was helpless. But I know of no moral or legal obligation to give away

any legal opportunity or advantage just because its owner cannot utilize it himself.

There would have been nothing remotely illegal or improper if the management of the plaintiff corporation had demanded some compensation for its loss privileges. Indeed, it is probable that the intention of the statute permitting the consolidation of the two positions was to provide salvage for the loser, not profit for one which sustained no loss.

Each corporation then had a bargaining position. The stakes were high. Neither could win them alone, although each had an indispensable something that the other was without. It was as if a treasure of seventeen million dollars were offered by the Government to whoever might have two keys that would unlock it. Each of these parties had but one key, and how can it be said that the holder of the other key had nothing worth bargaining for?

The management, probably without improper intent, failed to claim for the plaintiff the advantages of its position, turning them over without compensation for the advantage and profit of another affiliated corporation. On the face of it, the conclusion would seem warranted that the plaintiff is entitled to what fair arm's-length bargaining would probably have yielded. To ask this can hardly be stigmatized as capitalizing mere nuisance value. This is not the blackmailing transaction which offers to forego doing another injury if bought off. This merely seeks a share in the benefit which it transferred.

I would reverse and remand to the District Court for findings in accordance with this sketchily stated doctrine of unjust enrichment.