438 F.Supp. 185 (1977)
Harry JUMP, Superintendent of Insurance, State of Ohio, Columbus, Ohio, Conservator of Manchester Insurance and Indemnity Company (an Ohio corporation), Plaintiff,
v.
MANCHESTER LIFE & CASUALTY MANAGEMENT CORPORATION, Ralph Hutchings, Samuel Goldenhersh, James B. Hutchings, Robert V. Hutchings, and Carl Miller, Defendants.
No. 76-556 C (1).
United States District Court, E. D. Missouri, E. D.
September 12, 1977.
*186 William G. Ohlhausen, J. L. Pierson, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Gerald A. Rimmel, Susman, Schermer, Willer & Rimmel, Mark I. Bronson, St. Louis, Mo., for defendants.

MEMORANDUM
MEREDITH, Chief Judge.
This matter is before the Court on the motion of plaintiff for partial summary judgment on Counts I and III, and on defendants' motion for summary judgment on Counts I, II, and III. For the reasons stated below, the motion of plaintiff for partial summary judgment will be granted in part on Count I and denied as to Count III, and the motions of defendants for summary judgment will be denied as to Count I and granted as to Counts II and III.
Plaintiff, Harry Jump, was, at all times relevant herein, the Superintendent of Insurance for the State of Ohio. On September 23, 1975, pursuant to Chapter 3903 of the Revised Statutes of Ohio, Jump was appointed conservator of Manchester Insurance and Indemnity Company (hereinafter M.I.& I.). As conservator, plaintiff brought this diversity action, pursuant to 28 U.S.C. § 1332, for damages and an accounting, alleging in Counts I and III that defendants converted, and despite demand, have refused to return moneys which are the property of M.I.& I., and in Count II that the defendants' actions constitute a breach of the fiduciary obligation owed by defendants to plaintiff, for which plaintiff alleges the defendants are jointly and severally liable.
M.I.& I. is an insurance corporation, incorporated under the laws of Ohio. Except for directors' qualifying shares, all the shares of M.I.& I. are owned by Manchester Life & Casualty Management Corporation (hereinafter Management Corp.), which is incorporated under the laws of the State of Missouri. The five individual defendants, Ralph Hutchings, Samuel Goldenhersh, James Hutchings, Carl Miller, and Robert Hutchings are, and were at all times relevant herein (with the exception of Miller, whose M.I.& I. directorship began in the spring of 1975), all members of both the board of directors of Management Corp. and that of M.I.& I. In addition, defendant Samuel Hutchings, a Missouri resident, was *187 chairman of the board of both companies, Goldenhersh was vice president and general counsel of both companies, and James Hutchings was president of both companies and on the executive committee of both companies.
Management Corp., as parent for the affiliated group consisting of Management Corp., M.I.& I., Pioneer Bank and Trust Company (hereinafter Pioneer), and Premium Budget Company (hereinafter Premium), filed consolidated federal income tax returns for the calendar years 1970, 1971, 1972, 1973, and 1974. Each subsidiary figured its federal income tax liability on an individual basis, and submitted the amount due to Management Corp. On or before March 15, 1974, Management Corp. filed an Application for Tentative Refund for Carryback of Net Operating Loss, Form 1139, for the year ended December 31, 1974.
During the calendar years 1970, 1971, and 1972, M.I.& I. had paid to Management Corp. the total sum of $733,505.00 as its contribution of tax payments for the consolidated tax returns for these years. In 1973 and 1974, M.I.& I. showed substantial losses, and in 1974 the Internal Revenue Service paid to Management Corp., which in turn paid it to M.I.& I., the sum of $703,255.00, representing a tax refund for the calendar years 1970, 1971, and 1972. Thus, of the total amount of taxes paid by M.I.& I. in 1970, 1971, and 1972, all but $30,250.00 were recovered in 1974.
On or about May 6, 1975, the Internal Revenue Service paid to Management Corp. the sum of $692,983.17, representing a refund for the calendar year 1972, and $118,467.19, representing a refund for the calendar year 1971, which sums total $811,450.36, and include interest in the amount of $13,022.36. These Treasury checks were deposited on May 8, 1975, in Management Corp.'s account 33-292-9 at Pioneer. In May and June of 1975, Management Corp., at the request of the Chief Examiner of the Illinois Department of Insurance, speeded up its agents' balance payments from a ninety-day lag to a sixty-day lag, paying M.I.& I. $2,606,291.62 in checks drawn on its regular account No. 33-292-9, as well as a $100,000.00 check drawn on its "collection" account No. 33-450-2.
On March 10, 1975, Premium executed and delivered its check, payable to Management Corp., No. 90813, dated March 10, 1975, in the amount of $16,676.00, representing Premium's contribution of tax payments in contemplation of the 1974 consolidated income tax return, and on March 11, 1975, Pioneer credited Management Corp.'s general account, No. 33-292-9, with the amount of $179,522.00, which represented Pioneer's contribution of tax payments in contemplation of the 1974 consolidated income tax return.
In Count I, plaintiff alleges that the income tax refund of $692,983.17 for the tax period ending December 31, 1972, and the refund of $118,467.19 for the tax period ending December 31, 1971, both of which were issued on or about May 2, 1975, were the property of M.I.& I., and that defendant Management Corp., on or about May 6, 1975, converted these funds to its own use. Plaintiff alleges that, because M.I.& I. losses occasioned the refund, M.I.& I. should receive the refund, and that it would be unjust enrichment to allow Management Corp. to keep the refund. Defendant Management Corp., in its financial statement of December 31, 1974, carried the refunds to be made in 1975 as payable to subsidiaries. In 1974, M.I.& I. was the only subsidiary with a net loss. The refundable taxes were also carried on the December 31, 1974, statement of M.I.& I. as an asset. Plaintiff demands, in Count I, judgment in the amount of $811,450.36, together with interest and costs.
In Count II, plaintiff joins all the individual defendants and alleges that each of them breached his fiduciary duty to act with due care and diligence in preserving the property and assets of M.I.& I., by allegedly refusing to transfer to plaintiff the 1975 tax refunds of $692,983.17 and *188 $118,467.19 for a total of $811,450.36. Plaintiff prays that the defendants be held jointly and severally liable for the alleged breach, that defendants be made to render an accounting to plaintiff, and that judgment be granted against the individual defendants jointly and severally in the amount of $811,450.36, plus interest and costs.
In Count III, plaintiff incorporates the allegations of Count I and alleges that, based on recently discovered tax returns, the amount allegedly due to plaintiff is actually $943,167.36 (which includes the $811,450.36 claimed in Count I), as well as interest from December 31, 1975, and costs.
In support of its motion for summary judgment, Management Corp. argues that the 1975 tax refunds were properly an asset of Management Corp., and that, therefore, it is impossible that Management Corp. converted the refunds. Consequently, the individual defendants contend that they are not liable for a breach of their fiduciary duty. Defendant Management Corp. argues that, had plaintiff filed an individual tax return during the relevant period, and a request for a tax refund in 1975, plaintiff would have received only $30,250.00, as plaintiff had already recouped in 1974 $703,255.00 of plaintiff's total taxes paid from 1970 through 1972, which were $733,505.00. Although it was plaintiff's loss which occasioned the refund, the moneys actually refunded were paid into the Internal Revenue Service from the earnings of subsidiaries other than plaintiff, except for the $30,250.00 which plaintiff had not yet recouped. Thus, defendant contends that it would be unjust enrichment to allow plaintiff to recover the tax refund.
Defendant Management Corp. further argues that the subsidiary does not have an absolute claim to the refund. The Internal Revenue Code is silent about the allocation of tax refunds between members of an affiliated group, and defendant claims the right to allocate the refunds among the affiliated companies as its business judgment dictates, because ". . . a company whose loss was utilized for the benefit of the group does not have a right to compensation from those who benefited," Western Pacific R. R. Corp. v. Western Pac. R. Co., 197 F.2d 994, 1003 (9th Cir. 1951).
In addition, defendant Management Corp. argues that it would be unjust enrichment to allow plaintiff to recover on Count III, because the sum of $943,167.36, which plaintiff claims, includes money paid by Pioneer and Premium into Management Corp. to cover their own tax liability. Defendant contends that the sum plaintiff seeks to recover is composed of the $811,450.36 I.R.S. tax refund and the $196,198.00 which Pioneer and Premium paid directly to Management Corp. to cover their tax liability, less $64,481.00 which Management Corp. retained.
Defendants further argue that, if they did have a duty to pay over the income tax refund to M.I.& I., this duty was discharged by their advance payments of agents' balances during May and June, resulting in a sixty-day agent balance rather than the ninety-day balance, which their contract committed them to.
A motion for summary judgment should be granted only if
". . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c).
Here, no genuine issues as to any material facts exist. The legal issue presented in this case is: where a parent company has regularly filed a consolidated federal income tax form, does a subsidiary have a right to receive those income tax refunds which are paid to the parent company as a result of the subsidiary's losses? If so, is the subsidiary's right to recover limited to the amount which it has previously paid in to the parent company to cover subsidiary's previous income tax liability? This Court holds that the conservator of a bankrupt *189 subsidiary has a right to recover an income tax refund channeled through a parent company filing a consolidated return, and that this right is limited to the recovery which the subsidiary would have had if it had filed individual returns throughout, so that plaintiff's recovery here is limited to the amount previously paid in taxes.
Since M.I.& I. paid $733,505.00 to Management Corp. to cover M.I.& I.'s tax liability for the years 1970, 1971, and 1972, and received $703,255.00: in tax refunds, M.I.& I. had a right to $30,250.00, which represents the difference between the amount M.I.& I. paid as taxes and the amount which it was refunded. This sum is
". . . a tax refund resulting solely from off-setting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year [which] should inure to the benefit of that member." In the Matter of Bob Richards Chrysler-Plymouth Corp., Inc., 473 F.2d 262, 265 (9th Cir. 1973), cert. denied, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973) sub nom. Western Dealer Management, Inc. v. England, Tr. in Bankruptcy.

Plaintiff is clearly entitled to summary judgment in the amount of $30,250.00.
And this sum is not a debt owed by Management Corp. to M.I.& I., but rather, a fund which Management Corp. holds in a specific trust for M.I.& I., as in the Bob Richards case, the parent company
". . . was acting as a trustee of a specific trust and was under a duty to return the tax refund to the estate of the bankrupt." Ibid, p. 265.
Nor can Management Corp. successfully contend that its obligation to turn over the tax refund which it holds in trust for M.I.& I. can be fulfilled by paying off other debts to M.I.& I., as, for example, the agents' balances. Liabilities arising from fiduciary duties are independent of other debts. Here ". . . the trust res is not owing to the bankrupt's estate but rather is owned by it." Bob Richards, supra, at 265, citing Fore Improvement Corp. v. Selig, 278 F.2d 143, 145 (2nd Cir. 1960). Therefore, Management Corp. cannot set off the agents' balances payments against this fund, and is liable to M.I.& I. for the $30,250.00.
Plaintiff claims, in addition, all those tax refunds which Management Corp. received as a result of plaintiff's losses. To this M.I.& I. is not entitled. The I.R.S. Tax Code and Regulations do not specify how a tax refund is to be divided among affiliates, and there was no agreement worked out in advance among the affiliates. Management Corp. received tax refunds in 1975 totaling $811,450.36, and, in keeping with their past practice, assigned the refund, on its books, as due to subsidiaries. Management Corp. carried this refund on its books as a sum due to subsidiaries, while M.I.& I. in turn carried the same amount on its own books as money due as tax refunds. As the individual defendants were members of both the board of M.I.& I. and Management Corp., M.I.& I. was aware that Management Corp. carried the $953,167.36 as money due to subsidiaries, and Management Corp. was aware that M.I.& I. carried that sum as money due from tax refunds.
This bookkeeping alone, however, is insufficient to impose on Management Corp. a duty to pay over the funds. Nor does M.I.& I.'s loss give M.I.& I. a claim to compensation from those who benefited by that loss through the consolidated filing. Western Pacific R. R. Corp. v. Western Pac. R. Co., 197 F.2d 994, 1003 (9th Cir. 1951), rehearing denied, 197 F.2d 1012, rev'd on other grounds, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986, prior opinion aff'd, 206 F.2d 495, cert. den. 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407 (1954). Therefore, M.I.& I. cannot recover the full income tax refund. Nor can M.I.& I. recover, as they attempt to in Count III, those moneys paid into the parent company by other subsidiaries. To allow that would unjustly enrich the plaintiff, Bob Richards, supra; Western Pacific R. R. Corp. v. Western Pac. R. Co., supra.
*190 Accordingly, the plaintiff's motion for partial summary judgment on Count I will be partially granted in the amount of $30,250.00, plus interest from May 6, 1975, and plaintiff's motion for summary judgment on Count III will be denied. Defendant's motion for summary judgment will be denied as to Count I and granted as to Counts II and III.
In the event the $30,250.00, plus interest and costs, is not paid within a reasonable length of time, plaintiff may move for partial summary judgment on Count II and it will be granted against the individual defendants, who had no duty to pay any amount until judgment was rendered in this amount and the Management Corp. failed to make payment.