[Civ. No. 6005. First Appellate District, Division One.—December 8, 1927.]

JOSEPH SHELLEY, Appellant, v. BOARD OF TRADE OF SAN FRANCISCO, (a Co-operative Association) et al., Respondents.

Cooley, Crowley & Gallagher for Appellant.

Max Mayer, Joseph Kirk, and Jefferson E. Peyser and Grant H. Wrenn, for Respondents.

CAMPBELL, J., *pro tem.*—In February, 1922, the appellant, Joseph Shelley, and his brother, Sam Shelley, were copartners and were engaged in operating "Army Stores" in San Francisco, Fresno, Eureka, Pittsburg, and Stockton, California, and at Reno, Nevada. They owed large sums of money and were in financial difficulties and their creditors were uneasy. Joseph Shelley and his brother, Sam Shelley, feared they would be pressed by their creditors.

Accordingly, they conferred with Mr. Elkus, a member of the Board of Trade of San Francisco, about the situation and Mr. Elkus arranged a meeting of the Board of Trade, which was called for February 18, 1922, and at which time Mr. Elkus submitted a signed statement which he obtained from the Shelleys showing their assets and liabilities. At a subsequent meeting of the Board of Trade on February 24, 1922, the committee of investigation having reported, it was agreed that an extension of time be granted for the payment of the Shelleys' obligation, payments to be made at the rate of $15,000 per month, the Shelleys to execute interest-bearing notes to the creditors, and it was then agreed that the creditors were to stand all the expenses, and on March 8, 1922, the fact that the creditors were to stand the expenses was stated in a letter written by respondent G. W. Brainard, secretary of the Board of Trade, to the creditors, stating: "The expenses of the adjustment are to be borne by creditors." It was also agreed that all moneys received by the Shelleys in the conduct of their business were to be turned over to the Board of Trade for distribution to the creditors except that fifty per cent of the gross receipts should be used for operating expenses and replenishment of the stocks of merchandise, if necessary. It was subsequently learned by written confessions from the managers of the stores on Mission Street, San Francisco, and at Stockton, which were given to Adjuster Adelstein of the Board of Trade, that Joseph Shelley had not kept faith with the committee of the Board of Trade and had withheld sums probably amounting to several thousand dollars. At the meeting of the Board of Trade on April 10, 1922, this matter was reported and a demand was made of Joseph Shelley and Sam Shelley to effect a transfer of all of their assets for the benefit of the creditors or an attachment would be levied. This being refused an attachment was levied on April 12, 1922, on the San Francisco and Reno stores. Thereafter Sam Shelley, acting for and on behalf of the copartnership, at a meeting of the Board of Trade on April 17, 1922, stated that he had been able to obtain money from one J. Gollober with which to pay the creditors. This was agreeable to the committee, provided all the expenses incurred by the Board of Trade in the administration of the settlement of

this matter be paid by the Shelleys. Objection was made by Sam Shelley to standing the expense, but after discussion it was agreed between all parties that the regular Board of Trade charges, amounting to two per cent, should be borne by the creditors, but that all other expenses should be borne by the Shelleys. Both the Shelley brothers and the creditors proceeded to act upon this agreement and subsequently on April 20, 1922, a full written statement of account owing the creditors and containing the expenses referred to and all other matters (Defendants' Exhibit 2) was delivered by the Board of Trade to the attorneys representing and acting for the Shelleys and J. Gollober, to whom the Shelleys were to execute a bill of sale in consideration of his paying the outstanding obligations. After the Shelleys had examined the statement and agreed to its contents on April 24, 1922, Mr. Jaffa, one of the attorneys representing and acting for the Shelleys and Mr. Gollober, sent the money advanced by Mr. Gollober to the Board of Trade by letter, stating that the money was to be distributed to the creditors and for expenses as per statement of April 20, 1922, which included the items of expense here in dispute. The letter from Attorney Jaffa addressed to the Board of Trade, which was admitted in evidence, is as follows:

"I hand you herewith the sum of thirty-six thousand four hundred seventy 85/100 dollars, to hold in escrow upon the following terms and conditions:

"1. No disposition whatever of said sum shall be made nor shall any steps in this transaction be taken until Tuesday, the 25th day of April, 1922, and then only if no creditors of said Joseph Shelley and Samuel Shelley shall appear and contest the sale from said Joseph Shelley and Samuel Shelley to Julius Gollober. Should said contest be made, the said sum is to be returned to the undersigned.

"2. The attachment in the action in the Second Judicial District Court of Nevada, in and for the County of Washoe, entitled *G. W. Brainard* v. *Joseph Shelley and Samuel Shelley,* and numbered therein 18110, and the attachment in the action in the Superior Court of the State of California, in and for the City and County of San Francisco, entitled *G. W. Brainard* v. *Shelley Brothers et al.,* and numbered therein 124984, and each of them, shall be released

and the said actions and each of them shall be dismissed and the said promissory notes upon which the said actions were based shall be marked cancelled and delivered to the said Joseph and Samuel Shelley.

"3. Upon the completion of said acts and each of them, the said sum handed you herewith is to be distributed by you to those creditors listed on your statement of April 19, 1922, and the balance of said sum is to be applied by you in payment of your expenses incurred in connection with the Shelley Brothers as indicated on your statement of April 20, 1922, and you are to furnish said Shelley brothers with receipts in full from the said creditors and each of them. Any balance remaining is to be returned to the undersigned."

The third condition in the letter is that "said sum handed you herewith is to be distributed by you to those creditors listed on your statement of April 19, 1922, and the balance of said sum is to be applied by you in payment of your expenses incurred in connection with the Shelley Brothers as indicated in your statement of April 20, 1922, and you are to furnish said Shelley brothers with receipts in full from said creditors and each of them. Any balance is to be returned to the undersigned." Subsequently all of the material conditions set forth in the letter were complied with by the Board of Trade.

This action was brought to recover the sums listed in the statement of April 20, 1922, as costs, it being alleged that $2,977.38 in excess of the amount distributed to the creditors was paid by the Board of Trade. Judgment went for defendants, and from this judgment plaintiff has appealed.

Appellant urges the following points on this appeal: 1. The agreement made by Sam Shelley on April 17, 1922, was void because based on past and gratuitous consideration; 2. Findings were made outside the issues; 3. Findings were made which are contradictory or inconsistent; 4. Failure of the court to find on material issues; 5. Findings do not support the judgment; and 6. The evidence does not support the findings.

Appellant in his opening brief has cited cases to support his first contention that the agreement to pay the creditors and the expenses of the Board of Trade, which he admits was in fact executed, was void because based on a past

and gratuitous consideration. These cases merely support the point that the promise to pay for past services where the obligation did not previously exist is *nudum pactum*, and therefore unenforceable. While unquestionably this is sound law, it has no application here. This is not a suit in which the Board of Trade is attempting to enforce a promise on the part of the Shelley brothers to pay for the services rendered or the expenses laid out. The promise to pay in this case is already executed, and the question therefore is: Can plaintiff now recover back the money so paid?

The payment made in pursuance of the agreement covering the expenses in question was a voluntary payment and under the law cannot be recovered. The principle is elementary that if a person knowingly submits to a demand, however improper, by paying that which is demanded instead of invoking the remedy which the law affords him against such demand, such payment is voluntary and the recovery thereof cannot be had (*McTigue* v. *Arctic Ice Cream Supply Co.*, 20 Cal. App. 708 [130 Pac. 165]). The money covering the expenses was not paid under protest, nor are there any circumstances which take the present case out of the general rule stated. The amount in question was paid without any mistake on the part of Shelley brothers, who were fully cognizant of every fact and circumstance preceding the making of the payment, and such payment was freely and voluntarily made and duly authorized by Shelley brothers, being made by their attorney. "A voluntary transfer is an executed contract subject to all rules of law covering contracts in general; except that a consideration is not necessary to its validity" (Civ. Code, sec. 1040). Here the money was not paid under duress, but willingly and without protest. The general rule that recovery cannot be had of a voluntary payment is of course "subject to the qualification that in cases where the person making the demand obtains possession of the property of another without first having had resort to judicial proceedings to test the validity of his demand, payment under protest will be considered compulsory, and the money so paid can be recovered back, if the demand be unlawful and the delay necessarily incident to the recovery of the property by legal process would result in serious loss to the owner of the

property'' (*McTigue* v. *Arctic Ice Cream Supply Co., supra*). In *De Graff* v. *Board of County Commrs.*, 46 Minn. 319 [48 N. W. 1135], in a probate proceeding where the court advised an executor upon filing an inventory and appraisement that under a certain statute it was necessary before proceeding further in the administration he should pay into the county treasury $1,000 and file in the probate court a receipt therefor, and thereupon without objection the executor made such payment, the court says: ''The court below held that, as the plaintiff paid the money voluntarily and without objection, he cannot recover. . . . It may be stated as a general rule that where an unfounded or illegal demand is made upon a person, and the law furnishes him adequate protection against it, or gives him an adequate remedy in the premises, if he pays what is demanded, instead of taking the protection the law gives him, or the remedy it furnishes, he is to be deemed to have made the payment voluntarily and he must abide by it. . . . In the Mearkle case, which is more nearly like this than any other cited, the circumstances and condition of the estate were such that the court could see great and irreparable injury would accrue to it while the executor was seeking his legal remedy, and the payment was made under protest, so that not only the payor but the payee also understood that the former claimed the payment to be involuntary. We do not mean to say that in a clear case of coercion or duress a protest is necessary or that it would be sufficient without circumstances of coercion; but if there be doubt, under the circumstances, that the payment was voluntary, it may be taken into account in determining the question that the payor declared as a part of his act that he paid involuntarily.'' Here, as has been said, there was no duress. The attachment suits started were upon claims admittedly due, and because of fear that unless the creditors enforced their claims the assets of Shelley brothers might become depleted. The money was paid without protest, being willingly tendered under certain conditions contained in the letter in which the remittance was inclosed, and was, we think, a voluntary payment.

The cases cited by appellant in his reply brief on this question are not in point as the facts are not analogous to the facts here. In *Treat* v. *Craig*, 135 Cal. 19 [67 Pac. 7], a party

secondarily liable sought to recover a sum paid under a judgment from the party primarily liable. This presents a case of subrogation, which is not involved in the present case. In *Kaiser* v. *Barron,* 153 Cal. 474 [95 Pac. 879], the question involved the refusal of the court to recall an execution issued for costs irregularly included in the judgment, and *Rowland* v. *Watson,* 4 Cal. App. 476 [88 Pac. 495], is a case where money was exacted under circumstances which savored of duress, and furthermore the payment was made under protest.

In regard to the second point urged that "Findings were made outside the issues," it may be said "if the findings of fact that are within the issues presented by the pleadings are sufficient to support the judgment, it will not be set aside because there are also findings outside of these issues. These latter findings are to be disregarded as immaterial" (*Firebaugh* v. *Burbank,* 121 Cal. 186, 188 [53 Pac. 560]).

In *Crescent Lumber Co.* v. *Larson,* 166 Cal. 168, 171 [135 Pac. 502], the court says: "The rule just stated (referring to the fact that a finding outside the issue must be disregarded) is subject to the qualification that a finding may be considered where the issue though not formally raised by the pleadings was tried in the court below without objection" (see, also, *McDougald* v. *Hulet,* 132 Cal. 154 [64 Pac. 278]), and in *Semple* v. *Cook,* 50 Cal. 26, 29, the court uses this language: "It is useless to come here to seek a reversal of a judgment upon the findings alone, unless they actually negative all the other facts involved by the pleadings and which *might* exist consistently with those found, or unless it distinctly and affirmatively appears that the facts as found constitute *all* the facts found in the case."

Under the authorities cited findings numbered 13 and 14 and the latter half of finding number 10 complained of as made outside the issues are proper findings. Finding 13 is a finding that subsequent to April 17, 1922, and prior to May 24, 1922, a full and complete statement of all moneys received, expenses paid, and disbursements made by the Board of Trade was delivered to J. Gollober and the plaintiff; that after the receipt of this complete statement and after the transfer to J. Gollober by the Shelley brothers

there was due and owing to the Board of Trade and the creditors $36,470.85, which sum included $1,574.20 expenses incurred by the Board of Trade in the matter. Finding 14 finds that the moneys paid to the Board of Trade were paid by J. Gollober with knowledge of Joseph Shelley and in his presence and after a full and complete statement from the Board of Trade, which included said expenses, and the latter half of finding 10 finds that subsequent to April 17, 1922, Joseph Shelley and Sam Shelley transferred their interest in said business and the property of Shelley brothers and all moneys to which they were entitled from the Board of Trade to J. Gollober.

There is ample evidence in the record received without objection to support these findings. The plaintiff testified that at the time he wrote the letter he had seen a list of the creditors whose claims were filed with the Board of Trade; that he had to have this list to talk to Mr. Gollober; that he had received a statement of the amount of money that the Board of Trade had on hand; that the statement in evidence, Exhibit 2 (statement of account owing creditors and containing expenses), is a statement which was in his possession at the time he made the deal with Mr. Gollober, and that in figuring up with Mr. Gollober and Mr. Jaffa as to the amount of money that would be required to clean up this matter the list of creditors (Exhibit 2) was the basis upon which he acted.

Edward M. Jaffa testified, without objection, that Joseph Shelley and Sam Shelley were at his office on April 24, 1922, at the time this transaction between Shelley brothers, Julius Gollober, and the Board of Trade was completed; that he prepared the necessary documents at that time, including the letter to the Board of Trade, a bill of sale and the letter of April 24, 1922. All of these documents were shown to both Joseph and Samuel Shelley. They both signed the bill of sale. The figure of $36,460.85 was the amount claimed by the Board of Trade. The witness further testified that he told the Shelleys the amount of this figure, and they said in substance that Julius Gollober could advance that sum of money upon the terms and conditions mentioned in his (Jaffa's) letter to the Board of Trade. Sam Shelley said that "Julius Gollober could and should advance thirty-six thousand four hundred and seventy dollars and eighty-five

cents to the Board of Trade of San Francisco in accordance with their agreement and in accordance with that letter.''

The finding that the Shelleys transferred all their interest in the business and all moneys to Gollober finds support in the bill of sale from Joseph Shelley and Sam Shelley to Gollober (Defendants' Exhibit 4), which recites that in consideration of $36,345, Joseph Shelley and Samuel Shelley sell, assign, and transfer all of their interest in those certain stores (naming all the stores owned by them) and in and to all moneys which might become due to them from the Board of Trade to Julius Gollober.

The foregoing is sufficient to support the findings complained of as being outside the issues; furthermore, the facts found, if outside the issues framed, are but logical conclusions from other facts found and which were directly in issue and therefore authorized (*Hunt* v. *Davis,* 135 Cal. 31, 35 [66 Pac. 957]).

There is no merit in the third point that findings were made which are contradictory or inconsistent, for before the court will reverse a judgment on this ground it must appear that the findings are absolutely contradictory and cannot be reconciled and that they are so material that it cannot be determined upon which finding the court relied for judgment. In the cases cited by appellant the findings were absolutely contradictory, inconsistent, and irreconcilable, and further, this condition existed with respect to findings which were material to support a judgment.

Appellant contends that findings numbered 4 and 8 are inconsistent in that finding number 4 finds that it is true that the agreement set forth in the second cause of action of the complaint was made, but that finding number 8 finds a different agreement was made. Finding number 5 finds that the agreement referred to in finding number 4 was modified and that it was then agreed by the Shelley brothers that the Board of Trade should retain and be paid all of the expenses of the Board of Trade incurred, and finding number 8, being subsequent to the findings which found the original agreement and that the original agreement was modified, relates to that second or modified agreement. We do not agree with appellant that there is an irreconcilable conflict between findings numbered 8 and 9. It is clear that finding number 8 finds that from all

money received from the stores there was to be turned over to the Board of Trade for the purpose of paying off the creditors at least fifty per cent of the gross receipts, the remainder to be used for operating expenses and replenishment of the stock, if necessary, while finding number 9 finds that it was agreed that all expenses incurred and paid in connection with said matter should be paid out of the moneys received by defendants.

In considering the claim that the findings are inconsistent, we adopt the following language from *Haight* v. *Haight*, 151 Cal. 90, 92 [90 Pac. 197]: ''We must continually bear in mind the well-settled rule that findings are to be liberally construed in support of a judgment, that all of the findings are to be read and considered together and, if possible, are to be reconciled so as to prevent any conflict on the material points; and that unless the conflict is clear and the findings incapable of being harmoniously construed, a judgment will not be reversed on the ground of a conflict in the findings (*Ames* v. *City of San Diego*, 101 Cal. 390, 394 [35 Pac. 1005]; *Murray* v. *Tulare Irr. Co.*, 120 Cal. 311, 315 [49 Pac. 563, 52 Pac. 586]; *People's Home Sav. Bank* v. *Rickard*, 139 Cal. 285, 291 [73 Pac. 858]; *Mitchell* v. *Hutchinson*, 142 Cal. 404, 409 [76 Pac. 55]; *Heaton* v. *Arper* (*Heaton-Hobson Asso. Law Offices*), 145 Cal. 282, 285 [78 Pac. 721]).''

█ Appellant next contends that the court failed to find on material issues raised by the pleadings, viz., that Sam Shelley assigned and transferred to plaintiff his claims and demands against defendants; that defendants have not paid said sum of $2,977.38 or any part thereof; that prior to the commencement of this suit the Board of Trade paid to plaintiff Joseph Shelley and his brother Sam Shelley all moneys owing them, and that the Shelley brothers turned over to defendants $2,977.38 in excess of the amount distributed by defendants to the creditors.

The failure to find on material issues is only ground for a reversal; if the judgment cannot be supported without such a finding, or if such a finding were made, it would be favorable to the appellant and require a different judgment. It is also the rule that a finding which may seem material may be rendered immaterial by other findings which cover the issue, either by recital of an ultimate fact or a finding

of probative matter, the logical conclusion of which would be the particular issue claimed to be material (*Blochman* v. *Spreckels*, 135 Cal. 662, 664 [57 L. R. A. 213, 67 Pac. 1061]; *Patterson* v. *Rubenstein*, 6 Cal. App. 440 [92 Pac. 401]; *Johnson* v. *Perry*, 53 Cal. 351, 354; *Robinson* v. *Placerville & S. R. Co.*, 65 Cal. 263, 266 [3 Pac. 878]; *Merrill* v. *Merrill*, 102 Cal. 317, 319 [36 Pac. 675]; *Sewell* v. *Price*, 164 Cal. 265, 271 [128 Pac. 407]).

The issues upon which appellant contends there were no findings and which were material issues are immaterial in view of the other findings made, and further, that they are of such a nature that, conceding that had findings been made in favor of appellant it would in no way have affected the judgment and therefore is not ground for reversal.

█ As to the first material issue upon which no finding was made that Sam Shelley assigned and transferred to plaintiff all his claims or demands against defendants, it may be said that, had a finding been made, and assuming it had been made in favor of appellant, it would not have affected the judgment. However, finding number 3 covers this issue by finding the ultimate fact that it is not true that the plaintiff ever since the fourth day of June, 1923, was or is the sole owner or holder of any claim or demand against the defendants or either of them, either in the sum of $2,977.38 or any sum or amount. The ultimate fact is not the assignment but the ownership, the finding as to which was made. Finding number 6—"that it is not true that the plaintiff and his brother turned over to the defendants the sum of $2,977.38 or any other sum or amount in excess of the amount owing to the said creditors and the defendants" and finding number 12—"that the said defendants did not, nor did either of them withdraw or retain any moneys" eliminate the necessity for any such finding contended for by appellant, for if there was nothing withheld by defendants belonging to plaintiff, it follows there was no obligation for payment on their part, and such finding contended for by appellant, therefore, falls within the category of the cases cited, in which the issue becomes immaterial because of other findings.

As to the complaint that the court omitted to find on the issue raised in paragraph IV of the answer that the

Board of Trade, "prior to the commencement of the suit, paid to the said plaintiff Joseph Shelley and his brother Sam Shelley all moneys owing to them," it may be said that the allegation did not stop with the quotation given by appellant, but continues: "That they did fully account to said plaintiff and his said brother, Sam Shelley, of and concerning all moneys received." There is sufficient evidence to show an accounting was made both as to expenses and receipts and all matters pertaining to the transaction, and finding number 13 is to the effect that no money was ever due and therefore it was unnecessary to pay anything, and the allegation that all moneys owing them were paid is merely a general allegation that "if anything were due," which in this case there did not happen to be.

Appellant finally complains under this assignment that the court failed to find on the allegation of the second cause of action that "settlement in full of said accounts was thereafter and in the month of April, 1922, made with said creditors; that plaintiff and his said brother duly performed all the conditions of said agreement on their part and turned over to defendants the sum of $2,977.38 in excess of the amount distributed by defendants to said creditors." Finding number 6 is to the effect that it is not true that the plaintiff and his brother turned over to defendants the sum of $2,977.38 or any other sum or amount in excess of the amount owing to the creditors and the defendants. Appellant contends that finding number 6 is not a finding on this point, because the agreement set forth in the second cause of action and found by the court to have been made provided only that the money was to be turned over for distribution to the creditors until their accounts were paid. The fact that this agreement was found to have been made does not modify the effect of the second agreement and which was a modification of this first agreement and which the court found to have been made. It is clear what finding number 6 means. However, in view of the evidence and the other findings, appellant's contention, if correct, would in no way affect the general judgment.

There is no merit in appellant's assignment that the findings do not support the judgment. Appellant complains under this heading that finding number 2, based upon the

denial to paragraph II of the first cause of action of the complaint, is tantamount to an admission that the defendants received money from both brothers for the use and benefit of both of them. An analysis of this denial seems to negative such contention. The denial reads: "Denies that the defendants received from the plaintiff or his brother Sam Shelley, or either of them, the sum of $1,574.20 or any other sum or amount to or for the use of plaintiff or his said brother, Sam Shelley, or either of them." Certainly such denial is not, as claimed, a negative pregnant and is a good denial, for if the defendants did not receive $1,574.20 from the plaintiff or his brother, or either of them, or any sum or amount from the plaintiff or his brother, or either of them, it is inconceivable how it was possible to receive any amount from both of them. However, if there be any merit in this contention, it is disposed of by finding number 6, finding "that it is not true that the plaintiff and his brother turned over to the defendants the sum of $2,977.38 or any other sum or amount in excess of the amount owing to the said creditors and the defendants."

Lastly, appellant urges that "the evidence does not support the findings," and directs our attention to several findings, complaining first of finding number 3, that the plaintiff is not the "owner or holder of any claim or demand against the defendants or either of them." The evidence at the trial was to the effect that the Board of Trade has not retained nor has the plaintiff any claim or demand against the defendants or either of them, and finding number 6 finds such to be the fact. And if the fact be true as found, that neither the plaintiff nor his brother turned over to defendants the sum of $2,977.38, or any other sum or amount in excess of the amount owing to the said creditors and the defendants, the finding that the plaintiff is not the owner or holder of any claim or demand against the defendants or either of them would also be true and supported by the evidence.

Next appellant claims that finding number 5 is not supported by the evidence because the agreement is void for lack of consideration. This objection has been given consideration and determined adversely to appellant's contention.

As to the other findings complained of under this heading and also finding number 3 just considered, it may be said that, even assuming such findings to be erroneous, it would in no way affect the judgment or be ground for reversal, for the fact that a finding is unsustained by the evidence is immaterial, where the remaining findings are sustained and are sufficient to support the judgment. As was said in *Moore* v. *Copp,* 119 Cal. 429, 436 [51 Pac. 630] : "It is not necessary to consider whether objections to these findings are well taken, for, however erroneous, the judgment cannot be set aside inasmuch as it may rest upon finding F." (See, also, *Ehat* v. *Scheidt,* 17 Cal. App. 430, 438 [120 Pac. 49] ; *Lovell* v. *Frost,* 44 Cal. 471, 475.)

On the question of the performance of the conditions required, it is sufficient to say that the Board of Trade applied the money received to pay off the creditors and reimburse itself for the expenses it laid out. So far as the application of the money is concerned, it was applied in accordance with the terms of the letter of April 24, 1922. There is not a word of evidence in the record that Shelley brothers at any time demanded of the Board of Trade the canceled notes, nor the receipts from the creditors. This is not a case where Shelley brothers are endeavoring to recover money for the breach of the terms of an escrow nor for the return of any documents. Unquestionably, had Shelley brothers considered the matter of any importance, they would have requested the return of the canceled notes and the delivery to them of the receipts. The delivery of the canceled notes to Shelley brothers and furnishing them with receipts were very inconsequential elements in the adjustment. As provided by section 1661 of the Civil Code, an executed agreement is one the object of which is fully performed. The main object of the entire arrangement here was to pay off the creditors, dismiss the attachment suits, avoid any contest on the part of the creditors to the sale of the assets of Shelley brothers to J. Gollober, who was to advance the money, and the reimbursement to the Board of Trade for the expenses it had incurred. All of these objects were fully performed and the contract was therefore an executed one. Furthermore, the contract was performed by Shelley brothers and J. Gollober in that they actually paid over the money to the Board of Trade, and

the Board of Trade dismissed the attachment suits and paid off the creditors and reimbursed itself for its expenses. If appellant is entitled to the return of the amount paid to the Board of Trade for expenses because of its failure to return the canceled notes and the creditors' receipts, he would for the same reason be entitled to the return of the entire sum of $36,470.85 paid, because if the contract was not executed and each and all of its terms and conditions, important and unimportant, were not complied with, appellant would be entitled to recover the entire fund transmitted, although in the meantime the attachment suits have been dismissed, the stocks of goods in the several stores transferred by bill of sale to J. Gollober, and the creditors' claims outlawed. This appellant is not contending for.

We would not have further lengthened this opinion by noticing this point were it not for the seriousness with which it is urged. We may dispose of it, however, by saying that in our opinion appellant's contention is more serious than sound.

The findings cover all of the material issues in the case, are supported by the evidence, and are sufficient to support the judgment.

We find no error in the record calling for a reversal of the judgment. The judgment is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.