WESTERN PAC. R. CORP. et al. v. WESTERN PAC. R. CO. et al.

No. 12506.

United States Court of Appeals Ninth Circuit.

Aug. 20, 1953.

496

Herman Phleger, Maurice E. Harrison, Moses Lasky, and Brobeck, Phleger & Harrison, San Francisco, Cal., Frank C. Nicodemus, Jr., A. Perry Osborn, Norris Darrell and Mahlon Dickerson, New York City, Leroy R. Goodrich, Oakland, Cal., for appellant, Western Pac. R. Corp.

Herman Phleger, Maurice E. Harrison, Moses Lasky, and Brobeck, Phleger & Harrison, San Francisco, Cal., for appellant Alexi I. duP. Bayard, receiver.

William E. Haudek, Julius Levy, New York City, Webster V. Clark and Rogers & Clark, San Francisco, Cal., Pomerantz, Levy, Schreiber & Haudek, New York City, and David Freidenrich, San Francisco, Cal., for appellants Metzger and others.

Allan P. Matthew, James D. Adams, Robert L. Lipman, Burnham Enersen, Walker Lowry and McCutchen, Thomas, Matthew, Griffiths & Greene, San Francisco, Cal., for appellees Western Pac. R. Co. and others.

Everett A. Mathews and Pillsbury, Madison & Sutro, San Francisco, Cal., A. Donald MacKinnon, Milbank, Tweed, Hope & Hadley, Forbes D. Shaw, Whitman, Ransom, Coulson & Goetz, New York City, for appellee Western Realty Co.

Before HEALY, Circuit Judge, and FEE and BYRNE, District Judges.

HEALY, Circuit Judge.

In its decision of April 6, 1953,[1] the Supreme Court vacated our order of January 30, 1952, 197 F.2d 994, 1012, denying the petitions of appellants and intervenors for a rehearing and rehearing in banc, and also set aside the later order of the full court, 197 F.2d 994, 1013, 1016, denying leave to Western Pacific Corporation to file a motion to reinstate its petition. On June 12, 1953, the court in banc referred the matter back to this division for consideration and action in conformity with our amended Rule 23. 205 F.2d 374. Accordingly, the original petitions for rehearing and rehearing in banc are again before us for disposition, this time in light of the Supreme Court's observations on the subject.

We turn first to petitioners' suggestion that the case be reheard by the full court. In the past in cases decided by a division rehearings in banc have been ordered in but four instances.[2] It has been the policy of the court to avoid the duplication of effort and the frustrations, delays and expense to litigants necessarily incident to such anomalous procedure except in situations of a very limited class, namely those in which intra-circuit conflicts appear to have developed,[3] or where the public interest in the administration of justice suggests that course.[4] No conflict exists or is claimed to exist in this instance, nor is there likelihood that any will develop in consequence

1. Western Pacific Railroad Corp. v. Western Pacific Railroad Co., 345 U.S. 247, 267, 73 S.Ct. 656.

2. See 197 F.2d 994, 1013, 1015, note 6.

3. Hopper v. United States, 9 Cir., 142 F.2d 181; Southern Pacific Co. v. Guthrie, 9 Cir., 180 F.2d 295, Id., 186 F.2d 926.

4. Evaporated Milk Ass'n v. Roche, 9 Cir., 126 F.2d 467, Id., 130 F.2d 843; Pacific Gas & Electric Co. v. Securities & Exchange Commission, 9 Cir., 127 F.2d 378, Id. 139 F.2d 298.

of our decision; and while the case, like all cases, is important to the parties the public has no perceivable interest in the issues or in the outcome.

Nevertheless various considerations are pressed upon us for calling upon the full membership of the court to turn its attention to the litigation. One of these is that the case is "difficult and complicated." Perhaps so, but it has not been thought that the mere presence of difficult problems warrants a departure from the normal three-judge procedure so essential to the dispatch of the court's business. Numerous causes presenting questions of greater perplexity than the present annually find their way here and are decided by divisions of the court with no feeling on the part of the judges that the administration of justice will suffer if they be not thereafter turned over to the full bench for reargument and a second decision.

But we are told that the amount at stake is so "stupendous" as to suggest a need that the "pooled wisdom" of the seven circuit judges be brought to bear upon the problem of who is entitled to it. We do not doubt that the case is important to the immediate parties, but what case that comes here is not? Surely the causes of all civil litigants are entitled to the same measure of attention on the part of the judges whether the amounts they involve be measured in terms of a few thousand or of millions. On the criminal side, where not infrequently the records present close and difficult questions of fact and law and where the liberty or life of the appellant is in jeopardy, the need for the exercise of such wisdom as the court possesses is certainly not less pressing than here. We are not disposed to inaugurate a practice which makes fish of one dissatisfied litigant and fowl of another; and unless the gates are to be opened to a flood of horizontal reviews it seems essential that we adhere to the principles which have guided us in the past. The normal court of three judges has functioned not only speedily but with a high degree of competence in the federal appellate system, and preservation of the right of the

successful litigant to enjoy the benefits of that procedure should remain a matter of major concern to the judiciary.

Finally we are reminded by counsel that two of the judges who participated in the decision are district judges and only one a circuit judge. The intimation here, apparently, is that a court of appeals so constituted is inferior in quality or its decisions somehow lacking in the attribute of finality attendant upon other decisions of the court. If we were to accept this thesis, wholly insupportable as it is both in fact and law, we ought in fairness to discontinue the practice of availing ourselves from time to time of the invaluable service of district judges in the disposition of our business. On petitioners' theory the presence even of one district judge on a division may taint the result, since as not infrequently happens, disagreement between the two participating circuit judges renders decisive the vote of the district judge.

█ In summary we conclude that the case is not of such significance to the full court as to warrant the latter's attention.

The case originally was briefed and argued by exceptionally able counsel. Prior to decision it had the painstaking study of the participating judges over a period of many months during which there were repeated conferences and exchanges of views. The petitions for rehearing have not produced in our minds a belief that the cause was wrongly decided or that another hearing would produce a different result.

In ruling on the petitions we do not propose to repeat what was said in the opinion or again to discuss the case at large. However, counsel have directed our attention to the comments of Mr. Justice Jackson in his dissent to the effect that "On the face of it, the conclusion would seem warranted that the plaintiff is entitled to what fair arm's-length bargaining would probably have yielded" [345 U.S. 247, 73 S.Ct. 671], and to his statement that he would reverse and remand for findings in accordance with the doctrine of unjust enrichment.[5] Our respect for the pronouncements of the Jus-

5. 345 U.S. 247, 273, 73 S.Ct. 656.

tice do not permit us to leave his comments unnoticed.

 It is of course true that the California courts, in common with the authorities generally, recognize a cause of action based on unjust enrichment. We do not, however, regard the doctrine as applicable here inasmuch as the appellant[6] has not sustained the burden of showing that appellee Western Pacific Railroad Company has in its possession money or property which came into its hands under circumstances which make it unjust to retain it, and which in equity and good conscience belongs to the appellant. The latter is claiming moneys which were earned through the operation of railroad properties in a trust estate administered for the benefit of unpaid creditors of its former wholly-owned subsidiary. It contends that had it not joined in the filing of consolidated tax returns the trust estate (appellee's predecessor) would have been required to pay these moneys to the United States; and that, the tax saving having been effected, appellee should be required to pay these moneys to the appellant.[7]

The title to and possession of the railroad properties were in the reorganization trustees who administered the operating company under the supervision of the United States District Court for the benefit of the unpaid creditors. These creditors had acquired their equities at a time when the operating company was wholly owned and controlled by the appellant. The reorganization trustees were appointed by the court; one of them was appellant's president and was appointed trustee upon appellant's recommendation. All of the officers and employees who acted in a dual capacity for appellant and the reorganization trustees were first officers and employees of the former and were subsequently used by the trustees because of their familiarity with the work involved. Such procedure is common in reorganization proceedings and does not sustain an inference that the trust estate dominated the parent company.[8]

In our decision we discussed the obligations of a holding company to its subsidiary and creditors, and its duty not to attempt to appropriate to itself an advantage which the tax laws give the subsidiary. Without intending to detract from the soundness of that principle, we shall assume for present purposes that it would have been proper for appellant holding company to bargain and exact payment as the price of its cooperation. So assuming, we must further assume that the bankruptcy court would have approved payment from the trust funds of an amount demanded by appellant as the price of its bargaining, and that the right to claim a tax offset which springs from ownership of stock that is completely worthless is not destroyed when the right to use the loss is determined to have a value of millions of dollars for bartering purposes.

It must be borne in mind that all the transactions were open and aboveboard and were carried on in plain sight of all concerned; that there was no fraud, deceit, unfairness, or overreaching; that the consolidated return was filed by appellant's president in accordance with the practice

6. In this discussion the term "appellant" has reference particularly to Western Pacific Railroad Corporation, and where necessary to the sense of what is said applies also to the remaining parties who claim to be aggrieved.

7. Lurking in the background of this case is a specious element which has no proper place in the decision, but which, when injected by innuendo, casts its shadow across the record. There is an insinuation that the creditors received a windfall of millions of dollars at the expense of the United States by reason of a loophole in the tax laws. Coupled with this insinuation is a Robin Hood philosophy that undeserved riches should be divided with the poor. Assuming, without conceding, that the creditors were unjustly enriched at the expense of the government, it would avail appellants nothing. The doctrine of unjust enrichment is applicable only when the property, in equity and good conscience, belongs to the plaintiff.

8. In its answer to the complaint in intervention appellant denied "on its own behalf and on behalf of its officers and directors all allegations * * * of domination and control of the plaintiff [appellant], its officers and directors."

of previous years; that the general counsel for appellant, who is of counsel for that party in this proceeding, recommended the employment of the tax counsel who conceived the idea of including appellant's stock loss in the consolidated return and called the attention of appellee's predecessor to the tax advantage.[9]

The men who controlled appellant at that time knew that the tax saving could not be effected without their cooperation. They did not threaten to repudiate the established practice of past years and deny to the creditors an advantage that the tax laws gave them, nor did they demand tribute for their cooperation. With full knowledge of all the facts surrounding the transaction appellant chose to follow the custom of previous years and permitted the tax advantage to fall where the tax laws ordained. What was done was consonant with the practice of these corporations during many years of affiliation. In previous years appellant had benefited taxwise by using the loss of the subsidiaries, and no attempt was made to bargain or exact payment for such use when the shoe was on the other foot. The use of the right to setoff by filing a consolidated return was the equivalent of a transfer voluntarily made, and was an executed contract. Compare Shelley v. Board of Trade of San Francisco, 87 Cal.App. 344, 262 P. 403.[10] See also Restatement, Restitution, § 1c, p. 13.

Any bargain that might have been effected at the time of the transaction would have been subject to the approval of the bankruptcy court. No claim was presented to that court although the final order of discharge was not made until two years after the filing of the consolidated return claiming the offset. The final order of the bankruptcy court provided that the assets of the reorganized company were to be "free and clear of all rights, claim, liens and interests of the former stockholders * *." There is no power in the district court sitting in an independent proceeding in equity to alter, modify, or amend bankruptcy orders.[11]

This is not a case where the appellant corporation is seeking to rescind or repudiate the acts of its officers who included the tax loss in the consolidated return. If a rescission of the executed agreement were possible it would not benefit the appellant as there would be no tax saving and the appellant's position would be unchanged. There are several unusual facets to this case, but perhaps the most unique is the paradoxical position of the appellant which seeks to confirm the acts of its officers and at the same time petitions the court to insert a provision in the executed agreement requiring the payment of tribute for its cooperation.

How could the courts remake the contract for the parties? How could this

---

9. Mr. Frank C. Nicodemus, Jr., was called as an adverse witness and testified that he was general counsel for the appellant corporation and had been continuously since 1934; that he was chairman of a special tax committee of reorganized railroads that was organized in 1943 or 1944; that he recommended to the trustees that the tax firm be employed; that he was able to and did represent the corporation's claims to the best of his ability; that he did not take directions or instructions from anyone as to what legal advice he should or should not give the appellant; that he was never dominated or controlled in any way in any of his activities as counsel for the appellant.

10. In that case the court said, at page 349 of 87 Cal.App., at page 407 of 262 P.: "The amount in question was paid without any mistake on the part of Shelley brothers, who were fully cognizant of every fact and circumstances preceding the making of the payment, and such payment was freely and voluntarily made and duly authorized by Shelley brothers, being made by their attorney. 'A voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity.' Civil Code, § 1040."

Consult also McMillan v. O'Brien, 219 Cal. 775, 29 P.2d 183, 91 A.L.R. 383.

11. In re Watts & Sachs, 1903, 190 U.S. 1, 27, 23 S.Ct. 718, 47 L.Ed. 933; Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 739, 51 S.Ct. 270, 75 L.Ed. 645; Moore v. Scott, 9 Cir., 1932, 55 F.2d 863, 864-865; Hanna v. Brictson Mfg. Co., 8 Cir., 1932, 62 F.2d 139, 145.

court or the district court determine "what fair arm's length bargaining would probably have yielded"? Bargaining presupposes negotiations to determine the maximum amount a buyer is willing to pay and the minimum amount a seller is willing to accept. Such activity is a matter of business administration, and is not a judicial function. A district court, like the court of appeals, is a constitutional court and "neither has any power or function other than what is strictly judicial." Public Service Commission of Puerto Rico v. Havemeyer, 296 U.S. 506, 518, 56 S.Ct. 360, 365, 80 L. Ed. 357.

The petitions for rehearing are denied.

Judge FEE did not participate in this determination.