HOYT, J.
The complaint in this action alleges that the defendant is a corporation doing business under the name of Herrick Foundation Memorial Hospital; that within one year last past the defendant became indebted to the plaintiff in the sum of $975, being the sum due plaintiff from defendant for the reasonable value of one pair of diamond earrings had and taken by defendant from the possession of plaintiff without her consent or permission and that neither said sum nor any part thereof had been paid to plaintiff.
The answer consists of a general denial of all of the allegations of the complaint excepting the allegation that the defendant is a corporation doing business under the name of Herrick Memorial Hospital, together with a separate defense alleging that the loss of the diamond earrings, if any, was solely through the fault and negligence of plaintiff. Nowhere in the pleadings is there any allegation that the defendant was at any time a voluntary hospital.
The trial court found that at all of the times in question the defendant Herrick Foundation owned and operated a hospital known as Herrick Memorial Hospital; that plaintiff was admitted to this hospital in an unconscious condition and remained unconscious continuously for a period of eight days; that at the time of her admission plaintiff was wearing a pair of diamond earrings of the reasonable value of $975; that the earrings were securely fastened to her ears by means of perforations in the ear lobes; that while plaintiff was still unconscious defendant, through its agents, removed plaintiff’s earrings to facilitate the taking of X-ray pictures of her head; that the pictures were taken to aid in the diagnosis and treatment of plaintiff’s illness; that defendant’s agents negligently wrapped plaintiff’s earrings in a piece of Kleenex, *879 fastened them to the collar of her bed gown with a paper clip, and negligently returned her to her room without taking any precautions for the safety of her earrings; that as a proximate result of the negligence of defendant, before plaintiff regained consciousness, the earrings became lost and that plaintiff had sustained damage in the sum of $975.
The trial court gave judgment in favor of plaintiff for only $250 because of the provisions of sections 1859 and 1860 of the Civil Code limiting the liability of voluntary hospitals for loss of or injury to personal property of any one individual patient to $250.
Prior to 1943 sections 1859 and 1860 of the Civil Code limited the liability of keepers of inns, hotels, furnished apartment houses, furnished bungalow courts, boarding houses and lodging houses. In 1943 the Legislature extended this limitation of liability to the “. . . operator of a voluntary hospital, rest home or sanitarium, ...”
No evidence was offered or admitted and no finding was made on the question of whether Herrick Memorial Hospital was a voluntary hospital.
The term “voluntary” as it pertains to legal matters usually has one of two meanings: either, an act done of one’s own free will, without compulsion or obligation; or, an act done without valuable consideration.
Black’s Law Dictionary, page 1746, gives the following definitions:
“Unconstrained by interference; unimpelled by another’s influence; spontaneous; acting of oneself. . . . Done by design or intention, purpose, intended. . . . Proceeding from the free and unrestrained will of the person. . . . Produced in or by an act of choice. . . . Resulting from choosing. . . .
“Without consideration; without valuable consideration; gratuitous, as a voluntary conveyance. . . . Also, having a merely nominal consideration; as, a voluntary deed. . . .”
The state Legislature and the courts of this state have used the word “voluntary” in various senses, depending upon its application. As concerns property, “A voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity.” (Civ. Code, § 1040; Shelley v. Board of Trade, 87 Cal.App. 344, 349 [262 P. 403, 407].) As applied to trusts, it has been held that, “A voluntary trust was defined in section 2216 of the Civil Code as ‘an obliga *880 tion arising out o£ a personal confidence reposed in, and voluntarily accepted by, one £or the benefit of another.’ . . . Webster’s New International Dictionary under the heading ‘voluntary-law’ gives this definition: ‘Acting, or done, of one’s own free will without valuable consideration, acting, or done, without any present legal obligation to do the thing done.’ It was in the latter sense that the word ‘voluntary’ was used in the amended section, otherwise it would not have been coupled with the word ‘revocable’ without reservation. . . .” (Touli v. Santa Cruz Title Co., 20 Cal.App.2d 495, 497 [67 P.2d 404, 405].) “A voluntary deposit is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party. ...” (Civ. Code, § 1814; Ennis-Brown Co. v. Richdale Land Co., 47 Cal.App. 508, 511 [190 P. 1064, 1065].) “A voluntary payment means one made without compulsion and one made on an illegal claim with knowledge of its illegality or groundlessness.” (Engelken v. Justice Court, 50 Cal.App. 157, 159 [195 P. 265, 266].)
The term “voluntary” as applied to hospitals has been defined by the New York courts under their statutes as meaning charitable hospitals. “Private hospitals, . . . are those maintained by private funds and operated by private individuals or corporations. So-called private hospitals are of two classes: One is known as the voluntary or charitable hospital, the other as the proprietary hospital or sanitarium (Hospital Survey for New York, vol. II, p. 112-113). Voluntary hospitals are organized under section 11 of the Membership Corporation Law. Such institutions are tax exempt and are chartered as nonprofit making corporations. Both indigent and paying patients are- received in charitable hospitals. . . . the fact that a profit is realized on some patients does not change the character of the institution; such payments are regarded as contributions to the income of the hospital, to be devoted like its other funds to the maintenance of the charity.” (Goldwater v. Citizens Cas. Co. of New York, 7 N.Y.S.2d 242, 247.)
Because of existing limitations on the liability of public hospitals, it is obvious that the 1943 amendments of sections 1859 and 1860 of the Civil Code were intended to apply to private hospitals. If the Legislature intended these amendments to apply to all private hospitals it would not have used the ferm “voluntary.” From the use of the term “voluntary” it is apparent that the Legislature intended that the *881 limitation of liability granted by these amendments should be limited to a certain class or type of private hospitals.
Since the operation of private hospitals is voluntary in the sense that the operators undertake such operation of their own free will, without compulsion or obligation, it is apparent that the Legislature did not use the term in that sense.
For the foregoing reasons we are of the opinion that the term “voluntary,” as used with reference to hospitals in sections 1859 and 1860 of the Civil Code, refers to hospitals operated for other than a valuable consideration; in other words, charitable hospitals. Under this view of the law, before defendant was entitled to the benefit of the limitation of liability granted to voluntary hospitals by sections 1859 and 1860 of the Civil Code it was incumbent upon it to plead and prove that at the time in question it was a voluntary hospital. In the absence of such pleading and proof and a finding to that effect, the judgment must be modified to change the amount of the same from $250 to $975 and, as so modified, affirmed.
The order appealed from was an order denying plaintiff’s motion to set aside and vacate the judgment and to enter another and different judgment in favor of plaintiff and against defendant for $975 and costs. This motion should have been granted but in view of the decision on the appeal from the judgment no action need be taken on the appeal from the order.
The judgment appealed from is modified by increasing the amount of the same to $975 and, as so modified, affirmed ; appellant to have her costs on appeal.
Wagler, P. J., and Ledwich, J., concurred.