**Meyer M. MEYERSON, Plaintiff,**

v.

**EL PASO NATURAL GAS COMPANY and Northwest Production Corporation, Defendants.**

Court of Chancery of Delaware.
New Castle.
July 27, 1967.

William E. Taylor, Jr., Wilmington, and Louis Kipnis, New York City, for plaintiff.

Clyde M. England, Jr., of Killoran & VanBrunt, Wilmington, for defendant, El Paso Natural Gas Co.

Henry M. Canby, of Richards, Layton & Finger, Wilmington, for defendant, Northwest Production Corp.

SHORT, Vice-Chancellor:

This is a derivative action brought by a minority stockholder of Northwest Production Corporation (Northwest) seeking an accounting by defendant El Paso Natural Gas Company (El Paso). The theory of the complaint is that El Paso has been unjustly enriched at the expense of Northwest by retaining tax savings resulting from consolidated income tax returns in which tax losses of Northwest were offset against

taxable income of El Paso. The case is before the court on cross motions for summary judgment. This is the decision on those motions.

The record establishes the following undisputed facts: Prior to June 1962 El Paso owned less than 80% of the outstanding stock of Northwest. As a result of an offer to purchase made to other shareholders El Paso, as of June 22, 1962, had acquired sufficient additional shares to increase its stock ownership in Northwest to more than 80%, thereby qualifying under the Federal Internal Revenue Code of 1954, as amended, to file consolidated income tax returns. With the consent of Northwest consolidated returns were filed for the years 1962, 1963, 1964 and 1965. In each return tax losses of Northwest have been utilized to offset taxable income of El Paso. The result has been substantial tax savings which El Paso has retained. During the period involved the directors and principal officers of Northwest were also directors "and/or" officers of El Paso. These are the principal facts. Others which the parties consider pertinent will be hereinafter mentioned.

■ Plaintiff contends that El Paso by reason of its stock ownership of Northwest and the duality of management was and is a fiduciary charged with the duty of treating the subsidiary and its minority stockholders fairly, and that it has breached its duty by retaining for itself "all dollar benefits * * * resulting from the inclusion of the tax losses of Northwest in the consolidated Federal income tax returns." The complaint prays not only for an accounting of the tax savings but also for the imposition of a "fair allocation agreement with respect to * * * tax savings realized in future years" from the utilization by El Paso of Northwest's tax losses in consolidated income tax returns.

Defendant El Paso contends that it has not dealt unfairly with Northwest in retaining all of the tax savings and that the imposition of an allocation agreement is, under the circumstances, beyond the power of the court.

■ El Paso concedes that in the factual situation appearing it owes fiduciary duties to Northwest. But the nature and extent of fiduciary duty depend upon the circumstances and the relationship of the parties in each case. Where the problem concerns duty of majority stockholders to the minority, or, more specifically, as here, parent corporation to minority stockholders of its subsidiary the "basic question is almost always one of fact: Were the minority stockholders fairly treated?" Abelow v. Midstates Oil Corp., 41 Del.Ch. 145, 189 A.2d 675; Western Pacific R. R. Corp. v. Western Pacific R. Co., 9 Cir., 197 F.2d 994, 1000. And see article in 74 Yale Law Journal 338 entitled "Corporate Fiduciary Doctrine in the Context of Parent-Subsidiary Relations." The test to be here applied, therefor, is that of fairness.

The authorities dealing with the question of the right of a "loss" corporation to participate in tax. savings resulting from the filing of consolidated income tax returns are limited in number. Three cases are cited to the court: Western Pacific R.R. Corp. v. Western Pacific R. Co., D.C., 85 F.Supp. 868, aff'd. 9 Cir., 197 F.2d 994; 206 F.2d 495; Case v. New York Central Railroad Company, Sup., 232 N.Y.S.2d 702, rev. 19 A.D.2d 383, 243 N.Y.S.2d 620, rev. 15 N.Y.2d 150, 256 N.Y.S.2d 607, 204 N.E. 2d 643; Alliegro v. Pan American Bank of Miami, Fla.App., 136 So.2d 656, cert. denied 149 So.2d 45. Contrary to the present, all the cases cited involved a loss-parent and a profit-subsidiary. In the *Western* and *New York Central* cases it was contended that the subsidiary dominated the parent and that the resulting fiduciary relationship required a fair allocation of the tax savings. In *Alliegro* it was contended that payment of the tax savings by the subsidiary to the parent without unanimous approval of the sub-

sidiary stockholders constituted an illegal dividend.

In *Western* the Court of Appeals, Ninth Circuit, affirmed (197 F.2d 994) a judgment of the trial court denying relief (85 F.Supp. 875). The appellate court, after stating the fairness test, enumerated the particulars of appellant's (197 F.2d p. 1001) argument of unfair treatment. Among these was the contention that the dual officers violated their fiduciary duties to the parent by failing to exact an agreement from the subsidiary requiring payment of money to the parent as a condition to their consent to file consolidated returns. In considering the problem thus raised the Court of Appeals, contrary to appellant's contention, viewed decisions of the Securities and Exchange Commission as holding that a loss-company was not entitled to compensation from those who benefited from the use of the loss. The court concluded that nothing in the Internal Revenue Code or the Regulations adopted thereunder compelled "the conclusion that a tax saving must or should inure to the benefit * * * of the company which has sustained the loss that makes possible the tax saving."

In discussing the duties of management of parent and subsidiary the court said: "The dual officers owed fiduciary duties to both corporations to promote the interests of both and to obtain for each what it was entitled to under the tax laws. Under this state of facts these officers had a positive duty to make use of the loss as they did, that is, to offset the income of members of the affiliated group with deductible losses of other members. If the positions of the corporations were reversed and the subsidiary had a loss and the parent had income, the officers would have been obliged to file consolidated returns to enable Corporation to make use of the loss."

A petition seeking a rehearing en banc was denied by the Circuit Court of Appeals. A writ of certiorari from this denial was taken to the Supreme Court of the United States. The latter court reversed the order denying an en banc hearing and remanded the case for further consideration (345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986), but in a dissenting opinion Justice Jackson saw fit to consider the merits of the controversy. He reasoned that the right to use a tax loss was a valuable asset which an affiliated corporation was not required to give away without compensation. He concluded that "the plaintiff is entitled to what fair arm's-length bargaining would probably have yielded."

Upon further consideration of the *Western* case the Circuit Court of Appeals reaffirmed its previous opinion. 206 F.2d 495. In further reference to use of tax loss the court said: "The use of the right to setoff by filing a consolidated return was the equivalent of a transfer voluntarily made, and was an executed contract * * * This is not a case where the appellant corporation is seeking to rescind or repudiate the acts of its officers who included the tax loss in the consolidated return. If a rescission of the executed agreement were possible it would not benefit the appellant as there would be no tax saving and the appellant's position would be unchanged. There are several unusual facets to this case, but perhaps the most unique is the paradoxical position of the appellant which seeks to confirm the acts of its officers and at the same time petitions the court to insert a provision in the executed agreement requiring the payment of tribute for its cooperation. How could the courts remake the contract for the parties? How could this court or the district court determine 'what fair arm's length bargaining would probably have yielded?' Bargaining presupposes negotiations to determine the maximum amount a buyer is willing to pay and the minimum amount a seller is willing to accept. Such activity is a matter of business administration, and is not a judicial function."

The *Western* case stands for the proposition that the retention of tax savings by a profit-subsidiary resulting from the filing of consolidated income tax returns is not unfair as to the loss-parent even where the circumstances disclose dual management and domination of the parent by the subsidiary with the resulting fiduciary duties.

Case v. New York Central Railroad Company, supra, was a minority stockholder's action which challenged the fairness of an allocation agreement whereby tax savings resulting from the filing of consolidated income tax returns could be allocated almost exclusively to the parent corporation. The Supreme Court of New York, Trial Term, dismissed the complaint on the ground that the agreement was not unfair to minority stockholders of the subsidiary. 232 N.Y.S. 2d 702. On appeal, the Appellate Division reversed the judgment of the trial court and entered judgment requiring the parent to account to the subsidiary for all of the tax savings retained by the parent. After noting that the parent stood in a fiduciary relationship to the subsidiary's minority stockholders, the Appellate Division held that the allocation agreement insofar as it permitted the total appropriation of the tax savings to the parent was unfair. In the course of its opinion the court recognized "the inevitable fact that there cannot be effective independent bargaining among affiliates." Except to say that total appropriation was unfair the court gave no indication of what allocation it would have considered to be fair. Two justices of the court dissented saying: "Even if this were an arm's length transaction, it would be extremely difficult, if not impossible, to determine what would be fair * * * Traditionally, what is fair is what these two parties would agree on. But actually in such a situation the terms of agreement would depend almost entirely on the bargaining ability and the personal characteristics of the parties. Such factors defy the making of an estimate of the result that would be reached * * * When the factor is added

that this agreement could not be made by disinterested parties, it must be the rule that anything short of gross and palpable over-reaching does not warrant court interference." On appeal from the judgment of the Appellate Division the Court of Appeals of New York reversed and reinstated the judgment of the trial court. 15 N.Y.2d 150, 256 N.Y.S.2d 607, 204 N.E.2d 643. The Court of Appeals, in effect, adopted the reasoning of the dissent in the Appellate Division, observing that the "majority felt itself unable to say what would be a fair proportion of the distribution of Central's tax loss looking forward from the date of judgment." In conclusion the court said: "No such faithlessness of the majority of Mahoning directors to its corporate interests has been demonstrated as to warrant judicial interference with the challenged corporate decision."

The effect of the *New York Central* decision is that it is not unfair for a loss-parent corporation to appropriate to itself all, or nearly all, tax savings resulting from the filing of consolidated tax returns with its profit-subsidiary.

In Alliegro v. Pan American Bank of Miami, supra, the court held that the payment of tax benefits by a profit-subsidiary to its loss-parent was the equivalent of dividends which could not be paid to the exclusion of minority stockholders. While the soundness of this decision may be questionable, application of its rationale to the present case would require a ruling adverse to the plaintiff.

Plaintiff attempts to distinguish the cited cases on the ground that they involved loss-parent and profit-subsidiary while the present action concerns profit-parent and loss-subsidiary. He argues that in the former situation at least 80% of any tax saving which is allocated to the subsidiary will "automatically accrue to the parent company through its dividend expectancy," whereas in the situation here presented none of the tax saving will accrue to the

subsidiary since it does not participate in dividends declared by the parent. In support of this argument plaintiff cites an article in 77 Harvard Law Review 1142 wherein the author, prior to reversal by the Court of Appeals, commented favorably on the decision of the Appellate Division in Case v. New York Central Railroad Company, supra. In concluding the article the writer observed that in the profit-parent and loss-subsidiary situation a consolidated return holds no advantage to the subsidiary absent an allocation agreement, and continued: "On the assumption that the subsidiary has contributed equally to the tax saving, half of the benefit might be attributed to the subsidiary. However, conceding again the impossibility of setting standards of fairness for possible allocation agreements, it might be best to require allocation of the entire tax saving to the subsidiary, since the parent will still realize 80 per cent of the gain through its dividend expectancy." As the quoted language indicates the dividend expectancy theory is uncertain at best. It ignores the "basic question" which is fairness. Moreover, it seems appropriate in the circumstances here appearing, to ask: What dividend expectancy does El Paso have from its stock ownership in Northwest?

■ Northwest is a wasting asset corporation. It operates annually at a loss with little, if any, prospect of profits in the foreseeable future. It has been dependent on El Paso for financing, management and office space. While its dividend history does not appear the fact of its continued annual losses would render questionable the legality of payment of dividends. Moreover, assuming an allocation of tax savings resulting from the consolidated returns there is no assurance that a dividend would be declared therefrom. Declaration of a dividend would be within the discretion of the board of directors and in the absence of fraud or gross abuse of discretion the judgment of the board could not be challenged. Moskowitz v. Bantrell, 41 Del.Ch.

177, 190 A.2d 749. It would seem apparent that in view of the financial condition of Northwest its minority stockholders would be unsuccessful in any attempt to compel payment of a dividend. Moskowitz v. Bantrell, supra. And see Eshleman v. Keenan, 22 Del.Ch. 82, 194 A. 40. Not only, therefore is the dividend expectancy theory in itself uncertain, but in the circumstances here appearing the uncertainty is compounded by the inability to predict that the minority stockholders of Northwest would in any event benefit from an allocation of the tax savings. The theory is too speculative to be applied here.

■ The complaint alleges that El Paso, prior to increasing its stock ownership in Northwest in 1962 "conceived of a plan" to utilize Northwest's tax losses and to appropriate the entire tax savings to itself, thus injecting into the case suggestion of a sinister motive. In his brief, also, plaintiff refers to "the plan and scheme." He points out that no mention was made by El Paso, in its 1962 letter to stockholders offering to purchase shares, of its intention to file consolidated returns and appropriate the resulting tax savings. The attempt to make an issue of El Paso's motive is not persuasive. Acquisition of additional shares to enable affiliated corporations to file consolidated income tax returns "is a perfectly legitimate and proper transaction, authorized and approved by the taxing authorities." Case v. New York Central Railroad Company, 243 N.Y.S.2d 620, 625 (dissenting opinion). Nor is the alleged intent to retain the tax savings of any consequence unless the retention would be unfair, the very question to be determined.

Plaintiff points to the minutes of the September 27, 1962 meeting of the board of directors of Northwest which disclose that the subject of the corporation's tax losses was considered and management was instructed to "take any steps necessary to obtain any advantage available." From this instruction plaintiff argues that North-

west's management "could and should have bargained for" an agreement with El Paso as to an allocation of tax savings. The difficulty with this argument is that the instruction added nothing to management's already existing duty to see that Northwest and its stockholders were fairly treated.

Plaintiff relies on the dissenting opinion of Justice Jackson in *Western* to support his contention that Northwest is entitled to compensation for use of its tax losses. Conceding, without deciding, that Justice Jackson's theorizing is in all respects legally sound, his conclusion, as hereinbefore stated, has found no favor with other authorities. Western Pacific R. R. Corp. v. Western Pacific R. Co., 206 F.2d 495; Case v. New York Central Railroad Company, 19 A.D.2d 383, 243 N.Y.S.2d 620 (majority and dissent); 74 Yale Law Journal 338. I, too, find the arms length measure unacceptable in the parent-subsidiary relationship.

■ What then would be a fair allocation? As in the *New York Central* case plaintiff makes no suggestion. The obvious reason for his failure to do so is that it is impossible, as between parent and subsidiary, to set fair standards for allocation agreements. Nor does this impossibility justify allocating the entire amount of tax savings to the loss-subsidiary, particularily where it appears, as here, that the subsidiary itself could not, in all probability, have ever availed itself of the use of the loss. The question, then, is reduced to one of business judgment with which the court should not interfere absent a showing of "gross and palpable overreaching." No such showing is here made.

I am satisfied that in the circumstances appearing plaintiff has failed to make out a case entitling him to the relief sought. His motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

Order on notice.