In the Matter of **BOB RICHARDS CHRYS-LER–PLYMOUTH CORPORATION, INC., Bankrupt No. 88007.**

**WESTERN DEALER MANAGEMENT, INC., Appellant,**

v.

**John M. ENGLAND, Trustee in Bankruptcy, Appellee.**

**No. 26791.**

United States Court of Appeals, Ninth Circuit.

Jan. 18, 1973.

Rehearing Denied Feb. 12, 1973.

Edward Sumner (argued), Los Angeles, Cal., for appellant.

Dennis Montali (argued), of Rothschild & Phelan, San Francisco, Cal., for appellee.

Before WRIGHT, KILKENNY and CHOY, Circuit Judges.

CHOY, Circuit Judge:

This is an appeal from an order of the district court reversing a bankruptcy referee's order denying the application of England (the Trustee) for an order directing Western Dealer Management, Inc. (WDM) to turn over to the Trustee a $10,063.25 net operating carryback federal income tax refund. The refund had been applied for and received by WDM after the close of the year during which the involuntary bankruptcy of Bob Richards Chrysler-Plymouth (the bankrupt) occurred. We affirm.

The essential facts are not in dispute. At the time the petition in bankruptcy was filed, on October 14, 1965, the bankrupt was a wholly owned subsidiary of WDM and WDM was an unsecured creditor of the bankrupt in the sum of $45,-000. In 1965 and 1966, at the request of WDM a consolidated federal income tax return was filed for the bankrupt, WDM and another wholly-owned corporation. The return for 1966 showed that the consolidated group was entitled to a refund resulting from a net operating loss which could be carried back for a refund of taxes paid by members of the group in prior years. The entire refund of $10,063.25 was due to the earnings history of the bankrupt. This sum was paid by the government to Haas, the accountant for both WDM and the bankrupt and he now holds the money as WDM's agent pending the outcome of this controversy.

On the Trustee's application for an order directing payment of the tax refund, WDM claimed as a set-off the $45,000 unsecured obligation of the bankrupt. The referee concluded that Haas held the money as WDM's agent, that WDM in turn held it as the bankrupt's agent, and that WDM could retain the refund free and clear as a set-off against the $45,-000 owed by the bankrupt. This last conclusion was the only issue raised in the district court, which held that mutual debts and credits required by Section 68(a) of the Bankruptcy Act (11 U.S.C. § 108(a)) did not exist.[1] The

---

1. Section 68(a) of the Bankruptcy Act provides:

    a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

correctness of this ruling is the only issue raised on appeal.[2]  We affirm.

■■  The Trustee, not WDM, is entitled to the refund.  First, we note that at the date of the filing of the petition in bankruptcy, the Trustee acquired any interest the bankrupt had in the carry-back tax refund.  Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).  Second, there is no evidence that the bankrupt or the Trustee at any time voluntarily assigned its rights in the refund to WDM.  It is true that the bankrupt consented to the filing of a consolidated tax return, but such consent cannot be construed to include the transfer of a valuable asset without further consideration.

■■  We are aware that "there is nothing in the [Internal Revenue] Code or Regulations that compels the conclusion that a tax saving must or should inure to the benefit of the parent company or of the company which has sustained the loss that makes possible the tax saving."  Western Pacific R. R. Corp. v. Western Pacific R. Co., 197 F.2d 994, 1004 (9th Cir. 1951), rehearing denied, 197 F.2d 1012, rev'd on other grounds, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986, prior opinion aff'd, 206 F.2d 495, cert. denied, 346 U.S. 910, 74 S.Ct. 242, 98 L.Ed. 407 (1954).  Normally, where there is an explicit agreement,[3] or where an agreement can fairly be implied,[4] as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability.[5]

2.  We discuss herein other related aspects of the appeal which we feel are essential to the determination that the refund properly belongs to the Trustee.

3.  In Case v. New York Central R.R. Co., 232 N.Y.S.2d 702, rev'd, 19 A.D.2d 383, 243 N.Y.S.2d 620, rev'd, 15 N.Y.2d 150, 256 N.Y.S.2d 607, 204 N.E.2d 643 (1965), a minority stockholder challenged the fairness of an allocation agreement whereby tax savings resulting from the filing of consolidated income tax returns could be allocated almost exclusively to the parent corporation.  The parent corporation consistently had substantial losses and the subsidiary substantial profits.  The agreement required that the subsidiary pay the parent 80% of its tax savings.  The court found that the agreement was fair noting that the parent's gain was not achieved at the cost of the subsidiary; that the subsidiary did receive some direct benefit from the agreement and received an indirect benefit in that the parent company remained a going concern.

4.  In *Western Pacific, supra,* the parties had been filing consolidated returns for over 35 years.  It has always in the past been the practice to assess tax liability pro rata to those members of the group who had taxable income without allocating any tax to a company showing a loss or without paying such company tribute for the use of its loss.  However, due to a reorganization the parent company lost any interest in one of the subsidiaries and it then sued the subsidiary asking for some compensation because the subsidiary was able to offset tax liability because of the parent's losses.  We found that there was no breach of fiduciary duty in the failure of the board to exact any tribute from the subsidiary and that this was a matter within the business judgment of the board that would not be over turned absent fraud, unfairness or overreaching.

5.  In Meyerson v. El Paso Natural Gas Co., 246 A.2d 789 (Del.Ch., 1967) minority shareholders of a subsidiary sued the parent for breach of fiduciary duty because the profits of the parent were offset by the losses of the subsidiary and the parent retained all of the tax benefit.  There was neither an express nor an implied agreement but the court upheld the actions of the parent.  The court noted that it was impossible for the judiciary to set fair standards for allocation agreements and that this was an area of business judgment in which the court would not interfere.  This case could be interpreted to stand for the proposition that the parent has no obligation to allocate any of the tax savings to the subsidiaries.  But even if we agreed with this decision, it would not alter the results in the instant case.  The court noted that the loss subsidiary itself could not avail itself of the use of the loss so that it was not necessarily entitled to compensation.  In our case, the tax refund was not related in any way to the earning patterns of WDM.  The loss carryback was due entirely to the earnings history of the bankrupt and independently it would

But in the instant case the parties made no agreement concerning the ultimate disposition of the tax refund. Absent any differing agreement we feel that a tax refund resulting solely from offsetting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year should inure to the benefit of that member. Allowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent.

The only reason for the tax refunds not being paid directly to the subsidiary is because income tax regulations require that the parent act as the sole agent, when duly authorized by the subsidiary, to handle all matters relating to the tax return.[6] Accordingly, the refund is made payable to the parent and the acceptance of the refund by the parent discharges any liability of the government to any subsidiary. But these regulations are basically procedural in purpose and were adopted solely for the convenience and protection of the federal government.[7] The Internal Revenue Service is not concerned with the subsequent disposition of tax refunds and none of its regulations can be construed to govern this issue.

■ Thus, the bankrupt consented to the filing of a consolidated return and to the WDM's acting as its representative in any dealings between the consolidated group and the government concerning their tax refund. WDM received the tax refund from the government only in its capacity as agent for the consolidated group. Since there is no express or implied agreement that the agent had any right to keep the refund, we agree with the referee and the district court that WDM was acting as a trustee of a specific trust and was under a duty to return the tax refund to the estate of the bankrupt.

■ WDM contends that even if it were merely an agent for collection purposes it is still entitled to retain the refund as a set-off. But "[i]n general where the liability of one claiming a set-off arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts and credits does not exist, and such persons may not set-off a debt owing from the bankrupt against such liability." 4 Collier on Bankruptcy (14th ed.) ¶ 68.04 [2.1] at 872. Western Tie and Timber Co. v. Brown, 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571 (1905); Bayliss v. Rood, 424 F.2d 142 (4th Cir. 1970). The rationale of this rule is simply that the liability arising from a fiduciary duty is entirely independent of the debt owing from the bankrupt. The trust res is not owing to the bankrupt's estate but rather is owned by it. Fore Improvement Corp. v. Selig, 278 F.2d 143, 145 (2nd Cir. 1960).

The judgment of the district court is affirmed.

---

have recovered the same amount from the government. Thus, we have possible unjust enrichment that was not present in *Meyerson, supra.*

6. The regulation then in effect was Treas. Reg. § 1.1502.16. Substantially the same requirements are now included in Treas. Reg. § 1.1502–77.

7. Although the parent is the only party with authority to act in regard to the tax return of the consolidated group, any deficiency of any member of the group is the responsibility of that member of the group to whom the deficiency is attributable. Treas.Reg. § 1.1502.16 (now § 1.1502.77); Internal Revenue Code § 1552. This factor further enforces our view that to allow the parent to keep the refund would be unjust enrichment because the parent could keep the refund without any risk of assuming tax deficiencies of the subsidiary.